Porter.
5p 452
129 537

HALEY, et al. VS BENNETT.

*Of the lien of a vendor, upon real estate, for the pur-
chase monies.*
*As to Chancery practice.*

1. Where an original bill is sufficient, both as to allegations,
and parties, to authorise a decree rendered,—such decree
will not be reversed because a party, not material, has not
been brought into Court; or because an amended bill,
does not seek process against a party, who has answered.

2. Where a vendor of real estate, seeks to enforce a lien for
the purchase money, against the estate in the possession of
the vendees' assignee, it is not necessary that all the *mesne*
conveyees, (having no interest,) should be brought be-
fore the Court.

3. Where a vendor seeks to establish his equitable lien for
the purchase money, against real estate sold, in the posses-
sion of the vendees' assignee—the fact that a decree has
been made against the vendee, for any deficiency which
might exist, after a sale of the premises, such vendee be-
ing only before the Court, by decree, *pro confesso*,—will not
authorise a reversal here—the case being brought before
this Court, by the vendees' assignee, alone.

4. *Aliter*, if the case had been prosecuted here, by the vendee
himself.

5. All the essential incidents of a mortgage, in particular re-
gard to a lien upon the premises for the purchase money,
attach to, and control a contract for the sale of lands, where
the vendor makes a bond conditioned for title, when pay-
ment is complete.

6. The vendor of real estate, who parts with the possession,
and executes a bond, conditioned for the making of titles,
when the purchase money is paid,—has a lien upon the es-

tate, which he may enforce in Chancery, against the estate itself, in the possession of the assignee of the vendee.

7. Nor is a vendor in such case, bound first to proceed against the vendee, for the recovery of the purchase money, before he seeks satisfaction, in Chancery, against the premises sold.

8. And à vendor in such case, may well maintain ejectment for the lands sold: though a recovery in such action might be prevented by the vendee's bill in Chancery, to redeem.

9. But the recovery by a vendor, of the possession of the premises, in ejectment, would not have the effect of disannulling the contract of sale.

10. The vendor in such a case, could only maintain the possession until the rents and profits had discharged the incumbrance; when Chancery would compel a conveyance to the vendee, or his assignee.

This case was brought up by writ of error to the Circuit Court of Franklin county, exercising Chancery jurisdiction, to reverse a decree, rendered below, against the plaintiff in error.

The original bill was filed by defendant in error, on the fifteenth day of February, eighteen hundred and thirty-three, to subject a certain lot of land, with the improvements thereon, in the town of Tuscumbia, to the payment of the purchase money for the lot.

The bill stated, that the complainant was the owner of lot, number five hundred and sixty-three, in the town of Tuscumbia, Franklin county; and at the request of one David A. Browder, who he prayed might be made a party to the suit, he contracted to sell the lot to him, at the price of five hundred dollars. This contract took place about the eighth day of February, eighteen hundred and

thirty-one, and was at that time esteemed to be for the value of the premises. The payments were to have been made as follows: One hundred dollars, on the twenty-fifth day of December, eighteen hundred and twenty-eight; the like sum on the twenty-fifth of December, eighteen hundred and twenty-nine; the like sum on the twenty-fifth of December, eighteen hundred and thirty; and the like sum on the twenty-fifth of December, eighteen hundred and thirty-one: for which, notes were executed, and the sum of one hundred dollars was paid down— the notes yet, however, remaining unpaid. The complainant executed his written undertaking to Browder, at the same time, to make him a deed, whenever the purchase money should be paid for said lot; but as he kept no counterpart of the paper, he was unable to set it out.

The bill stated that complainant was advised, and believed that Browder agreed to convey, and did bargain, so far as he was able, the said lot to one Robert K. Haley, who he prayed might also be made a party to the bill, and who at the date of the bill, occupied the premises. Complainant represented that the lot at the date of the bill, had a tolerably commodious framed dwelling house on it, with two rooms below, and two stories high, and some other improvements, but that the improvements were daily disappearing, and that the complainant was advised that Haley threatened to destroy the dwelling house, rather than that orator should ever get it, and that the kitchen, a good log house, had disappeared, and great spoliation

had taken place on the premises, under the possession of Haley..

The bill further stated that Browder had long since left the State, in embarrassed pecuniary circumstances, and that there was no reasonable prospect of his ever paying the purchase money due to the complainant: that Haley also, was, as complainant was advised and believed, in bad circumstances, and that nothing could be obtained from him, if the complainant had a right to make a pecuniary demand on him: That the lot, with the improvements, if sold to the best advantage, would not pay the claims of the complainant on Browder. Complainant was satisfied that unless Haley was restrained by injunction, he would continue to waste the property, and wantonly injure it, which complainant was advised, Haley had threatened to do.

The bill further stated, that complainant became the owner, by purchase from the United States, and one Charles A. Stokes, and a copy of the title was appended to the bill. The bill prayed that an injunction might be granted, restraining Haley from waste, and from removing any of the improvements from the lot, to the end that complainant might be saved harmless against any damages, said Haley might commit or suffer to be committed, while in possession, and until a final decree; and that in case said Haley did not give security for the safe keeping of the premises, the sheriff might be commanded to take the property in possession, and that a receiver might be appointed by the Court, to rent the premises, and to hold the rents and profits, subject

to a final decree, and that further relief might be granted to protect the rights of complainant: That the lot might be decreed to be sold to pay the claims of complainant, disposing of the surplus in such manner as should be right, and that complainant might have a decree against Browder, and execution thereupon, and writs of subpœna and injunction, and further relief, &c. All of which was sworn to, &c.

The exhibits A, B, and C, contained copies of the notes from Browder to complainant, as set forth in the bill: the patent from the United States for the lot to Charles A. Stokes and complainant; and the relinquishment of all claims on the part of Stokes, to complainant.

And it appearing to the Court, at the April term, eighteen hundred and thirty-three, that the subpœnas had not been served, it was ordered that an alias issue against Haley; and as it appeared that Browder was not an inhabitant of the State, publication was ordered against him, for six weeks in succession, two months previous to the next term, when, if he did not appear and answer, the bill was to be taken *pro confesso* against him.

It was further ordered, adjudged and decreed, that the defendant, Robert K. Haley, be required to enter into bond, with sufficient security, in the penalty of one thousand dollars, forthwith, conditioned, that he waste and destroy not the property mentioned in the complainant's bill, until the matters complained of in said bill, should be heard and adjudged of by the Court. And in default of said Haley's entering into bond, with sufficient security,

for the amount, and conditioned as aforesaid, then
and in that event, the sheriff was required to take
the property into his possession, and appoint a re-
ceiver to take charge of said property, and rent or
lease the same, until the matters contained in the
complainant's bill were inquired into and adjudged
of by the Court, and said receiver so appointed, was
to report to the Court from term to term, his pro-
ceedings therein.

And on the thirteenth day of May, eighteen hun-
dred and thirty-three, the writ was served upon
Robert K. Haley, the plaintiff in error, and he en-
tered into bond with security, conditioned agreea-
bly to the order of the Court; and during vacation
he filed his answer, which stated : that respondent,
in the year eighteen hundred and twenty-eight,
was persuaded to buy the improvements on the lot
No. 563, in the town of Tuscumbia, for which he
paid to John W. Norris the sum of four hundred
and seventy-five dollars ; and before the purchase
he went to complainant and made a contract with
him, to take respondent's note, for two hundred and
twenty dollars, payable in a short time, with a de-
duction of what Browder had paid, and was to give
up the four notes he held on Browder, before
Browder left the county.   Under this verbal con-
tract with complainant, respondent conveyed to
John W. Norris, one hundred acres of land in M'-
Nairy county, Tennessee, at the estimated value of
three hundred dollars, and a fine horse, and forty
dollars—making, in all, four hundred and seventy-
five dollars, for the framed house that was built by
David H. Browder, on said lot.   Which last verbal
    5 P,        58.

agreement, respondent insisted, rendered the contract between Bennett and Browder, void. When respondent came into possession of the lot, which was on the twenty-fifth day of December, eighteen hundred and twenty-eight, he went to complainant and offered to give his note as above stated, according to the contract with complainant, and because respondent would not give complainant three tons of iron for another lot, complainant refused to take the note, but never claimed payment of Browder's notes of respondent until last fall. The house had cost respondent about eight hundred dollars, as it had undergone extensive and valuable repairs, since respondent came into possession.

The answer further stated, that respondent had, a short time before bill filed, offered complainant a horse in part payment, which complainant agreed to take, but afterwards declined taking him,—respondent then sold him, for eighty dollars. Respondent informed complainant, if he did not comply with the verbal contract, as above set forth, by giving up the notes of Browder, he would remove the house from the lot No. 563, which was probably the reason complainant had prayed an injunction.

The answer further stated, that the kitchen, on the premises was so decayed, that it fell down in the spring of the year eighteen hundred and thirty-two, during the absence of respondent from the State.—That a lot in the vicinity of No. 563, sold for forty dollars, which was about the value of the lot in dispute. The answer contained some unim-

portant and irrelevant matter, and prayed respondent might be dismissed with his costs, &c.

The answer was accompanied with a copy of the bond of complainant to Browder, and its assignment to Norris, and also from Norris to plaintiff in error, which was as follows:

"The State of Alabama, Franklin County.— Know all men by these presents, that I Samuel Bennett, am held and firmly bound unto David A. Browder, in the penal sum of five thousand dollars, and for the true payment of which I bind myself, my heirs, executors and administrators, firmly by these presents. Sealed with my seal, and dated the fifth day of August, eighteen hundred and twenty-eight. The condition of the above obligation is such, that whereas the said Bennett hath, some time previous to this date, bargained and sold unto David A. Browder, a certain lot of ground, lying and being in the town of Tuscumbia, designated and known in the plan of said town, as lot No. 563, for the sum of five hundred dollars, in the following payments, viz: fifty dollars in cash, the receipt whereof is hereby acknowledged; fifty dollars, due the twenty-fifth December, eighteen hundred twenty-seven; one hundred dollars, due the twenty-fifth of December, eighteen hundred and twenty-eight; one hundred dollars, due the twenty-fifth of December, eighteen hundred and twenty-nine; one hundred dollars, due the twenty-fifth of December, eighteen hundred and thirty; and one hundred dollars, due the twenty-fifth December, eighteen hundred and thirty-one—and when said Browder shall have completed the payments

for said lot of ground, then the said Bennett binds himself to make said Browder, or his assigns a good and sufficient title, in fee simple, free from the claim of all and every other person, whatsoever; and then this obligation to be void, otherwise to remain in full force and virtue.

(Signed)             " Samuel Bennett. [L.S.]
" Witness—John Caldwell.

"Received on the within the sum of fifty dollars in full of the payment due the twenty-fifth December, eighteen hundred and twenty-seven. This fourth of December, eighteen hundred and twenty-eight.          " Samuel Bennett. [L.S.]

" I assign all my right, title and interest in and to the within described lot of land, to John W. Norris, for five hundred dollars, to be secured. Given under my hand and seal, this tenth day of August, eighteen hundred and twenty-eight.

            " D. A. Browder. [L.S.]

" I assign all my right, title and interest, in and to the within described lot, and the house, to Robert K. Haley, for value received. December, twenty-fifth, eighteen hundred and twenty-eight.

            " John W. Norris. [L.S.]"

And at the October term of the same Court, eighteen hundred and thirty-three, it appeared to the satisfaction of the Court, that publication had been made, agreeably to an order, made in this cause, at the last term of the Court, requiring the defendant, David A. Browder, to answer the complainant's bill, on or before the first day of the present term of the Court; and as the said defendant failed to appear and answer the bill, it was consi-

HALEY et al. *vs* BENNETT.

dered by the Court, that the bill be taken *pro confesso* as to him, and set for hearing *ex parte*, at the next term of the Court; that the parties have leave to take depositions and the cause be continued.

And at the April term, eighteen hundred and thirty-five, the complainant obtained leave to a- mend his bill, upon filing the same sixty days from the rising of the Court ; and it appeared to the sa- tisfaction of the Court, that the defendant, Brow- der was not an inhabitant of this State—it was, therefore, ordered, that unless he appeared on or before the first day of the next term, and answer- ed the complainant's amended bill, the same would be taken *pro confesso* against him. Publication was also ordered for four weeks successively, two months previous to the next term of the Court, and the cause was continued.

The amended bill repeats what is contained and charged in the original bill as already set out, and then goes on to say, that at the last term the com- plainant obtained leave to amend his bill, and to make one Stokes, who was a joint purchaser with complainant of the lot, from the United States, a party to this suit. That Stokes, as complainant was advised, did not reside in this State, and to the end that Stokes might be made a party respondent, complainant prayed subpœna and publication, and that the lot might be sold, to pay the purchase mo- ney yet due, with interest, from Browder; and that Stokes, and all claiming under him, might be estopped, and enjoined from setting up any claim in derogation of the rights of complainant, &c.

And at the October term, eighteen hundred and

thirty-five, it appeared to the satisfaction of the Court, that Charles A. Stokes, one of the respondents in this cause, was a non-resident of this State, and on motion, it was ordered by the Court, that unless he appeared here, and answered the complainant's bill, on or before the first day of the next term of the Court, the same should be taken, *pro confesso*, and set for hearing, *ex parte*, and that the order should be published for three weeks, at least two months before the next term of the Court, &c.

And at April term, eighteen hundred and thirty-six, it appeared to the satisfaction of the Court, that John W. Norris, one of the defendants, was a non-resident of this State, and on motion, it was ordered by the Court, that unless he appeared and answered complainant's bill, on or before the first day of the next term of the Court, the same should be taken *pro confesso*, and set for hearing, *ex parte*, and that the order should be published for three weeks, at least two months before the next term of the Court, &c.

And then the complainant filed his second amended bill, which was not dissimilar to the original bill, or to the bill as first amended. It was styled, the amended bill of Samuel Bennett, complainant, against Robert K. Haley, David A. Browder, Charles A. Stokes and John W. Norris, and stated that, theretofore, to wit, on the fifteenth day of February, eighteen hundred and thirty-three, complainant had filed his original bill in the Court, against D. A. Browder and Robert K. Haley, and amended the bill by making Charles A. Stokes a party, and obtained leave for that purpose, and made John W.

Norris, a party; that said original bill charged, that complainant had been the owner of the lot, five hundred and sixty-three, in the town of Tuscumbia, and had bargained and agreed by contract in writing, to sell the same, to one David A. Browder, at the price of five hundred dollars, to be paid as follows: One hundred dollars, on the twenty-fifth of December, eighteen hundred and twenty-eight; the like sum on the twenty-fifth of December, eighteen hundred and twenty-nine; and so on, annually, until four payments should be made, making four hundred dollars, with interest, and to secure said four annual payments, four several notes were given, for one hundred dollars, each, and interest, as above stated, and filed as exhibit, A.—all on one piece of paper, which notes were due and unpaid: the first hundred dollars of the whole amount having been paid: that complainant gave his written obligation to Browder, to convey him a title, when the balance of the purchase money should be paid; which said obligation was not in the possession of complainant, and which therefore, he was unable to set out. That in this bill, he had charged that Browder sold his interest to said Haley : that Haley lived on the lot, and threatened to destroy the improvements, &c. and that no more of the purchase money had ever been paid, than the hundred dollars, which complainant had received of Browder: That complainant, together with Stokes, had been the purchasers of said lot, and patentees therefor, from the United States, and that Stokes had disposed of his interest to the complainant, as appeared by exhibit, C, of the orginal bill, and also

of this bill, together with the exhibits A and B; all of which complainant prayed might be regarded as exhibits of this amended bill.

The amended bill, thus amended a second time, went on to state that complainant had been informed, that Browder had indorsed the bond for titles, made by complainant to John W. Norris, and that Norris transferred it to Haley. Complainant here remarked, that as well as he could remember, the first bond for title, was lost or destroyed, and a subsequent one made, as set out in Haley's answer to the original bill, and which complainant thought, had the several indorsements above named, and which were prayed to be referred to, as if made exhibits of this bill. Complainant was advised that Norris should be made a party, which was prayed to be done. In the original bill, an injunction was prayed for, and obtained, restraining Haley from committing waste on the lot, and it also prayed, that the said lot might be sold, to satisfy the balance of the four hundred dollars, with the interest, being so much of the purchase money, yet due and unpaid. Complainant prayed that all the parties might be controlled, governed and estopped by a decree to be made and had in this cause: that the lot might be sold to raise the unsatisfied balance of purchase money, together with the interest and costs: that the title of Stokes might be decreed to complainant, and that by the decree of this Court, to be made, the purchaser at the sale to be made, should be vested with the legal estate, in the lot, in fee simple, and that Stokes, Haley, Browder and Norris, and

all others claiming under, by or through them, should be forever bared, enjoined and estopped, from setting up any claim or title, adverse to the title so to be decreed, and made to the vendee under an order of sale of the Court: that Stokes, Haley, Browder and Norris, might be parties respondents to the amended bill, and to the bill on file in the case,— that subpœnas issue, &c. Complainant charged that Norris and Browder had gone to parts unknown; that Norris lived in Tennessee, and Haley in Franklin county. Complainant thereupon prayed, that the amended bill be received, and publication be had to bring in the absent defendants.

The answer of John W. Norris, then came in, which stated, that on the twenty-fifth day of December, eighteen hundred and twenty-eight, he transferred to Robert K. Haley, a bond he held, made by complainant, and which complainant had given to Browder, who transfered it to respondent; the bond was conditioned to make title, to lot number five hundred and sixty-three, in the town of Tuscumbia, upon the payment of the purchase money, and bore date, fifth of August, eighteen hundred and twenty-eight, for which Haley gave respondent one hundred acres of land, in M'Nairy county, Tennessee, valued at three hundred dollars, and a horse and goods to the amount of one hundred and seventy-five dollars,—in all, making four hundred and seventy-five dollars. Before Haley confirmed the contract with respondent, he made a contract with complainant, to take Haley's note for a less amount, and payable in a shorter time, in the place of the notes he held on Browder, and

5 P.        59

complainant released Browder, on the four notes, mentioned in the bond, and in the original bill of complainant. The answer further stated, that when Browder left Tuscumbia, he took with him, a good team and wagon, and complainant was present, and claimed nothing on the notes,—that Haley was in good standing in respect to property, and complainant appeared satisfied with the contract to take Haley; and complainant did agree to take Haley's offer in the place of the notes of Browder, which he held, and was to give up the notes to Browder, before he left Alabama. Respondent further stated, that defendant, Haley, had made great and valuable improvements on the property, since he came into possession,—prayed to be dismissed with costs, &c.

*Francis Terry*, a witness for defendant, Haley, proved, that the kitchen, referred to in the original bill, as having been taken away by defendant Haley, fell down from decay, and that the same was not wrongfully taken down by defendant.

*Robert G. Kelso*, also for defendant, proved, that defendant Haley, had made improvements on the house, on lot number five hundred and sixty-three, painting, plastering, digging well, hanging blinds, under—pinning the house, &c.

*James Elliott*, for defendant, proved the lot, number five hundred and sixty-three, to be worth but ten or twelve dollars more than his own lot, which is adjoining, and is worth at most, but fifty dollars.

*Colin Bishop*, a witness for complainant, proved the assignment by Charles A. Stokes, of his interest in lot, number five hundred and sixty-three, to

complainant, which is endorsed on the patent from the United States to Stokes and complainant.

*James Hodges*, for complainant, proved the bond for title from Bennett to Browder, to be in the hand-writing of John Caldwell, then in Texas, and signed by complainant. The endorsement and notes, were in the hand-writing of Browder.

*John W. Norris*, a witness for defendant Haley, and who appears to be also a defendant in the action, proved that Haley gave him four hundred and seventy-five dollars, for the house on lot numbered five hundred and sixty-three. The payment was made in one hundred acres of land in M'Nairy county, Tennessee, valued at three hundred dollars, and the balance in a horse and goods, and that defendant said, complainant was to give up to Browder, the four notes for one hundred dollars each, which he held against him, and take in lieu of them, a note from Haley for a less amount, and payable in a shorter time.

And at the October term, eighteen hundred and thirty-six, the cause came on to be heard on the bill, answer and proofs taken, and it appeared, to the satisfaction of the Court, that the facts alleged in the bill were true, and that there was yet due to complainant, as alleged in the bill, four hundred dollars of the purchase money, for the said lot, numbered five hundred and sixty-three, in the plan of the town of Tuscumbia, in that county and State, and that there was the additional sum of two hundred dollars interest on the same, making the complainant's demand six hundred dollars, and that the said lot was liable for the payment thereof,

and that said Haley was entitled to said lot, so incumbered. It was therefore considered, adjudged, ordered and decreed, that unless the said sum of six hundred dollars, with interest from the date of the decree, and the costs of the suit, were paid to said complainant, by the first day of January next, (eighteen hundred and thirty-seven,) that then said lot should be sold by the sheriff to the highest bidder, in cash, and the proceeds to be first applied towards the payment of this judgment, and the costs, &c. and the surplus, if any, to be paid over to Roert K. Haley. And if the lot should not sell for enough to satisfy complainant's claim, that then the deficit should be levied of the goods and chattels, lands and tenements of David A. Browder.

And now at this present term of this Court, came the plaintiffs in error, and they said that in the record and proceedings in this case, and in rendering the decree, error had intervened.

1. The Court below erred in rendering a decree in this case, in favor of the defendant in error, when it should have decreed in favor of the plaintiffs in error,—the case not being made out by proof.

2. The Court below, erred in refusing to dismiss the bill in this case, for want of equity, apparent upon its face, and for want of jurisdiction.

3. The Court erred in rendering a decree in favor of the defendant in error, before the respondents below, were brought into Court, either by subpœna or publication.

And the defendant said that there was no error in the record.

*J. L. Martin*, for the plaintiffs in error.
*M'Clung*, contra.

GOLDTHWAITE, J.—The case which is presented on the record, is one of some novelty, and not entirely divested of difficulty.

The complainant sought, in the Court below, to subject a lot, in the town of Tuscumbia, in the same manner as if he had conveyed it by deed to Browder, one of the defendants below, and it by him, had been reconveyed, in mortgage, to secure the payment of the notes given for the purchase money. In point of fact, no deed or conveyance, of any description, was ever made by the complainant, but the legal title remains the same as before the sale, he only declaring, in writing, that he had sold, and binding himself to convey a title in fee, when full payment should be made of the notes given for the purchase of the lot.

From the bill and the title bond, which is set out as an exhibit to the answer of one of the plaintiffs in error, it appears that the complainant parted with the possession of the lot, and only retained the title as a mere security, for the payment of the consideration money. There is nothing in the contract stated, or in the papers exhibited, from which the conclusion can be drawn, that time of payment was intended or considered by either party, as essential to the continuance of the contract. If the money due to the complainant by the notes, should not be paid at maturity, the right to have back the lot, with its increased value, by reason of the improvements made on it, does not appear to have been

contemplated, nor that the notes should become void, by a surrender of the lot to the complainant. The particular form of the contract can not be considered as material. It is, to all intents and purposes, in the nature of a mortgage, and all the equitable incidents of one, must attach to the contract.

In Maryland, it has been held, that the vendor of real estate, *without deed,* has an equitable lien on the land sold for the payment of the purchase money, into whatsoever hands it might pass, with notice that the contract of sale has not been complied with.—*Ghislin vs Ferguson,* 4 Harr. & Johns. 522. So, in South Carolina, an imperfect agreement, intended as a security has been supported in equity.—*Menude vs Delaire,* 2 Desaus. 564; *Watson vs Wells,* 5 Con. Rep. 472; *Wadsworth vs Wendell,* 5 Johns. Ch. R. 224; *Daniels vs Davison,* 17 Ves. jr. 433.

So also, in the case of a sale and conveyance, the vendor has an implied lien on the estate sold, even against bona fide purchasers, with notice of the non-payment.—*Mackreth vs Symmons,* 15 Ves. 337; *Walker vs Preswick,* 2 ib. 622.

It is without doubt, that the complainant could have maintained ejectment for the lot sold, and his right to a recovery at law, could not have been prevented, but by the purchaser filing his bill to redeem the premises; but if *possession* had been recovered, the contract would not thereby have been disannulled. The complainant could only have held it until the rents and profits had discharged the incumbrance, after which equity would have compelled a conveyance to the purchaser or his assignees.

There is no rule of equity known to us, which will prevent the complainant from subjecting the lot to the payment of the purchase money, nor is he, (as has been supposed by the counsel for the plaintiffs in error,) bound to proceed against Browder, before he seeks satisfaction out of the mortgaged property—for so we must consider it.

In the case of *Dunkley vs Van Buren*, 3 Johns. Ch. Rep. 431, it was held, by Chancellor *Kent*, as the settled rule, that the mortgagee may proceed at law, on his bond or covenant, at the same time that he is prosecuting on his mortgage, in Chancery, and after a foreclosure, may collect the deficiency at law,—*Perry vs Barker*, 13 Ves. jr. 198; *Newhall vs Wright*, 3 Mass. R. 154; *Hatch vs White*, 2 Gall. 152.

The plaintiff in error, Haley, in his answer, sets up as a defence, that he entered into a new and distinct contract with the complainant, by which the mortgage, as he insists, was discharged; but the only evidence in the cause, to support the answer, is of declarations made by the respondent himself. This branch of the case may, therefore, be dismissed without further consideration.

The other principal reasons, for which it is said that the decree rendered should be reversed, are, because Charles A. Stokes, who is made a party defendant, by an amended bill, was not properly brought into Court; and because no process in the amended bill was sought against the respondent, Haley, and defendant, Browder.

In reply to both these positions, it may be observed, that the original bill was sufficient, both as

to allegations and parties, to authorise the decree rendered. Stokes can be considered as a material party, alone on the supposition, that a decree was necessary to be had, to divest him of an outstanding legal title to the lot. This was wholly unnecessary, as would have been the case, if the title to the lot had passed by deed, and the complainant had had no title, or a defective title to the premises.

It is a well settled rule of law, that the mortgagor can not dispute the title of the mortgagee—and as the decree does not attempt to divest the title from Stokes, there was no error in omitting to have him before the Court.

So, likewise, it was wholly unnecessary to have Norris, who sold the premises to one of the plaintiffs in error, before the Court; he had no interest whatever in the suit, and it would be exceedingly inconenvient, to require that all the *mesne* conveyancees, should be brought before the Court, for no other purpose, than to disclaim and recover costs of a complainant. The general rule as to parties, was well and properly laid down by Chancellor *Kent*, in the case of *Haimes* et al. vs *Beach*, et al. (3 John. Ch. Rep. 459,) and it is, that all *incumbrancers* or persons, *having an interest*, at the commencement of the suit, subsequent as well as prior in date to the plaintiff's mortgage, must be made parties, otherwise, they will not be bound by the decree.

It was also insisted, in the argument of the case, that the facts of the bill are not admitted by the answer of one of plaintiffs in error, and as Browder was only before the Court, on a decree *pro confesso*, all

the facts in the bill should have been proved.   The only material facts which were necessary to establish, were the sales, and the bond which is made an exhibit in the answer of Haley, and these are not only admitted, but established by proof.

If Browder had brought the case to this Court, the decree, so far as it renders a judgment against him, for the deficiency which may exist in the sale of the lot, would have been reversed in this Court, as not warranted by equity practice.—(*Dunkley* vs *Van Buren*, 3 Johns. Ch. Rep. 331.   *Globe Insurance Company* vs *Lansing*, 5 Cowen, 380.)   But as the case is removed to this Court, by Haley alone, and as the decree in this particular, does not affect him, he can have no advantage of this error.

The decree must be affirmed.


ORMOND, J. not sitting.