## CHAPMAN v. CHUNN, ET AL.

1. When upon a sale of land, upon future payment of the consideration, the vendor gives his bond for title when the purchase money is fully paid, he retains a lien, in the nature of a mortgage, upon the premises sold.

2. In such case, if the purchase money be not paid, chancery may decree a sale of the property, and apply the proceeds to its satisfaction.

3. A bill filed by the vendor, under such circumstances, need not disclose the nature of the vendor's title.

4. This lien is not impaired by the circumstance of the vendor's contracting, at the time of sale, to take, or actually taking, personal security for the payment of the purchase money.

5. That one has been placed in possession of land by the vendee, under such a sale, retaining the same, and claiming and refusing to pay over rents and profits, are sufficient grounds for making him a party to a bill filed to subject the land to payment of the consideration.

6. What constitutes multifariousness in a bill?

ERROR to the Chancery Court at Huntsville.

A bill was filed in the Chancery court, at Huntsville, by Reuben Chapman against Launcelot Chunn and James Linn, which charged that complainant, in November, 1839, sold to the defendant, Chunn, certain lands lying in Morgan county, for eighteen hundred dollars, payable at future periods, in three instalments, for which complainant took Chunn's notes, and gave his bond for title, to be conveyed after full payment of the purchase money. It was further agreed that Chunn should give good personal security, who should sign said several notes, but he failed and refused to comply with this part of the agreement. It is further charged that Chunn took possession of the lands, but has made payment of no part of the consideration, and has absconded with all his property, leaving his family and the said James Linn in possession; that Linn takes the profits, estimated at the annual value of $400, and although requested so to do, refuses payment of any part to complainant, notwithstanding he has offered to credit Chunn's notes with the amount of such payment. The bill further charges that lands have so fallen in value, that the tract sold is not now worth the purchase money; and seeks to recover rents, as well as to have the lands sold, and the proceeds applied to the satisfaction of said notes.

The subpœna was executed on defendant Linn, but returned " not found" as to Chunn, and the record shows no further proceedings against him.

Linn filed his answer, stating, in substance, that he knows nothing of the agreement between complainant and Chunn; that he found Chunn in possession, and made a contract with him, to the effect, that Chunn should furnish the land, and a certain number of hands, and that Linn should furnish certain other hands; that they should work in conjunction, and divide the crop equally. Linn denies that he has any other interest in the land, or that he intends holding possession of the same longer than may be necessary to gather his crop; and prays that his answer may be given the force of a demurrer to the bill.

No further step seems to have been taken toward preparation of the cause for final hearing; and at May term, 1842, on argument of said demurrer of defendant Linn, it was ordered by the

court, that the bill be dismissed generally, at complainant's costs.

It is now assigned for error, that the court below erred :

1. In sustaining the demurrer ; and

2. In dismissing the bill.

S. PARSONS, for plaintiff.

ROBINSON, for defendant.

CLAY, J.—The leading principle, involved in this case, has been well examined, and well settled, by the opinion of the court, in the case of Haley, et al. v. Bennett, reported in 5 Porter, 452, 473. In that case Bennett filed a bill against Haley & Browder, stating that the complainant had, some time before, sold a lot in Tuscumbia, with its improvements, to said Browder, for the consideration of five hundred dollars, part paid in cash, and the balance payable in several instalments, and had given his bond for the conveyance of title on full payment of the purchase money ; that Browder had afterwards contracted to sell, as far as he was able, to Haley, &c. ; on the coming in of Haley's answer, he appended thereto a copy of the complainant's bond, agreeing substantially with the allegations of his bill ; but assigned first to one Norris, and afterwards to defendant Haley.  On final hearing of the case, the circuit court, then exercising chancery jurisdiction, decreed a sale of the house and lot, the proceeds to be applied to the satisfaction of the balance of the purchase money, remaining due from Browder to Bennett, and the surplus, if any, to be paid to defendant Haley ; and if the proceeds of the sale were insufficient to satisfy the balance due, the deficiency to be levied of the goods and chattels of Browder.  From this decree a writ of error was prosecuted to this court, by which it was determined, amongst other things, that " all the essential incidents of a mortgage, particularly in regard to a lien upon the premises for the purchase money, attach to, and control a contract for the sale of lands, where the vendor makes a bond, conditioned for title, when payment is complete."  The court further held, in substance, that " the vendor of real estate, who parts with the possession, and executes a bond, conditioned for the making of titles, when the purchase money is paid—has a lien upon the estate, which he may enforce in chancery, against the estate itself, in the possession of the assignee of the vendee," and this without first pro-

ceeding against the vendee, for the recovery of the purchase money.

The principles thus laid down seem to apply, with great force to the case under consideration, and must decide its fate, unless some of the objections urged by the counsel of defendant Linn should prevail.

1. The first of those objections is, that the bill does not shew that complainant had title to the land : that he avers a willingness to make a deed, but does not aver an *ability*.

In reply to this objection, it may be asked, what right has the defendant Chunn, or any one holding under him, to raise the objection ? If the complainant is to be viewed as a mortgagee, having a lien on the premises for the sum due, as we have seen he is, he has an undoubted right to sell the subject of lien, whether of little, or great value, for what it may bring, till his claim is satisfied. It may be the complainant's misfortune, if the title to the mortgaged property is so doubtful, or bad, as not to produce an amount sufficient to pay his debt; but it certainly does not belong to the mortgagor, or person standing in a similar relation, to raise the objection. But the bill does not seem to be liable to the objection stated, if either of the defendants were in a situation to make it; for the complainant avers he "is *ready* and willing to comply with his agreement, so soon as payment shall be made." His agreement was to convey title to the premises ; and it is difficult to conceive, how a party can be *ready* to convey title, when he has none.

2. Again it is contended, that the agreement between the complainant and defendant Chunn, never was perfected—so that no such interest ever vested in Chunn, as would authorize this proceeding.

We have seen that complainant gave his bond to Chunn for title, which, so far as appears, is yet in his possession, and Chunn signed the several notes, but failed to procure any one to sign as his security. This was an additional security, promised by Chunn to complainant—the failure was the first breach of his contract; and it cannot be admitted that he shall take advantage of his own wrong, retain the complainant's bond, and, at the same time, defeat his claim to the purchase money.

3. It is further alleged, that complainant did not rely upon his lien, but waived it, by requiring security. Yet, the bill shows,

that, so far from waiving his lien, the complainant did not execute a deed, but only gave his bond for title, when full payment of the consideration should be made. By the agreement, Chunn was to have given security to his notes, besides leaving the title in complainant till full payment was made. The case of Foster against The Trustees of the Athenæum, [3 Ala. Rep. N. S. 302,] cited by the defendant's counsel, does not sustain the objection. In that case an actual conveyance of title had been made, and other, and independent securities taken; and after reviewing the authorities on the subject, the court comes to the conclusion, "that the law on this interesting subject ought to be considered as settled, at least in the United States; that when a vendor of land executes a conveyance, and takes personal collateral security, binding others as well as the vendee, as a note with security; or a collateral security, as a pledge or mortgage, that no lien exists on the land itself." Now, in the case before us, as we have seen, instead of conveying title, the complainant only gave a bond to make a title, on the condition, that full payment of the consideration was made. Hence, there is no analogy between the cases. And, we presume, it will not be seriously contended, that a vendor may not convey title, and take a mortgage on the same property, or give a bond for conveyance when the consideration is fully paid; which, as we have seen, has "all the equitable incidents of a mortgage," and, at the same time, take personal, or any other *additional* security for the payment of the purchase money.

4. Another objection, relied on by defendant Linn's counsel is, that there is a misjoinder of parties; that the bill does not show that Linn holds any estate, or even interest, under Chunn; nor any priority of estate or contract between them.

We do not think this objection sustained by the record. It is true the bill does not say in express words that a *contract* of any particular kind, was made between them; nor specify any particular *interest*, or *estate*, as having been passed from Chunn to Linn; but it expressly charges that, when Chunn left the country, he put Linn in possession of the land, and that Linn was then, and from the preceding winter had been, using the same, taking the profits thereof, and had declared his intention to continue to do so, without making to the complainant any payment, or remuneration whatever. The conclusion would result from these facts, that there was a contract of some nature between the par-

ties, by virtue of which Chunn transferred the possession and use of the land to Linn, under which the latter claimed the exclusive use and profits. Being in possession, under Chunn, and refusing to account to Chapman for rents, or profits, certainly raised the presumption that he claimed an interest in the property, and he was therefore properly, and necessarily made a party.

5. The last objection, relied on, is that the bill is multifarious— that if complainant has any right to rents and profits against Linn, it is not by force of his contract with Chunn—that regarding Chunn as a mortgagor and complainant as a mortgagee, he would have no right to rents and profits.

To constitute multifariousness, a bill must set forth several distinct matters, perfectly unconnected. If it merely seek to recover the value of land, and rents and profits issuing out of the same property, there certainly is not such entire want of connection, as to render it multifarious, even admitting that one may be rightfully recovered, and the other not. In the case under consideration, the complainant seeks to recover a certain amount due to him, by virtue of a lien held by him on certain lands; and alleging that the lands will not produce a sufficient sum for the satisfaction of the claim, he asks the court to supply the deficiency by giving rents and profits, which have issued out of the same land, during the existence of his lien. Now both claims are predicated upon the same land, belong to the same subject matter, and are supposed, by the complainant, to result from the same contract, made with him by one of the parties, under whom the other holds. Suppose he is mistaken, and claims too much, this should not be permitted to defeat his recovery of what he may rightfully claim. In the case of Kennedy's heirs and executors v. Kennedy's heirs, [2 Ala. Rep. N. S. 571] this court held the following language:

" The objection of multifariousness, it is said, must be confined to cases, where the case of each defendant is entirely distinct and separate *in its subject matter* from that of the other defendants; for the case against one defendant may be so entire, as to be incapable of being prosecuted in several suits; and some other defendant may be a necessary party to some portion only of the case stated. In the latter case, multifariousness would not be an available objection." [Story's Eq. Pl. 2d ed. 225; Attorney General v. Craddock, 3d Milne & Craig's Rep. 85.]

In continuation, in the same case, the court held it " difficult, if not impracticable, to reconcile all the decisions on this subject, or to educe from them general rules to test the objection. Without attempting to cite them, it may be said with truth, they are extremely various ; the courts seeming to be influenced by what was convenient and just, in the particular case, rather than lay down any inflexible rule; always discouraging the objection, where, instead of advancing, it would defeat the ends of justice."

In the case before us, the complainant found Linn in possession of land, on which, by contract with Chunn, he held a lien for a certain sum of money—that possession, too, was obtained directly from Chunn : possession, *prima facie*, raises a presumption of claim and interest in property : Linn not only held the possession, and used the land, but refused to account to complainant for rents and profits. He appeared to have an interest, if not a claim, to the property, which the complainant sought to subject to the payment of his debt ; and he was, therefore, properly made a party. Nor, if it should turn out on the final examination of the merits, that the complainant is not entitled to recover of Linn, does it follow necessarily, that the bill is multifarious, and that he cannot recover against Chunn.

The result of these views is, that the decree of the court below must be reversed, and the cause remanded for further proceedings.