JOHNSON & WIFE *vs.* COLLINS.

1. A declaration commencing "J C., plaintiff, complains of M. J. and his wife S. J., formerly S. M., defendants"—in which the instrument sued on is described as having been executed "by the said S. before her intermarriage with the said M."—and which avers that "the said defendant S., and the said defendant M. since his intermarriage, have not regarded," &c., sufficiently discloses the character in which the parties are sued, and that the instrument was executed by the wife, whilst *sole*.

2. Where a vendor by his bond undertakes to make title to land *in a reasonable time*, the vendee is bound to prepare and tender a deed, and his eviction by the vendor under a recovery in ejectment will not dispense with its performance.

3. When the effect of the ruling of the court is improperly to transfer the burden of proof from one party to the other, the legal intendment is that the latter is prejudiced.

4. The inability of a vendor to make title in accordance with the condition of his bond is sufficient to excuse the vendee from preparing and tendering him a deed.

5. A plea to an action on a bond, conditioned to make title free from all incumbrances, that the vendor by deed conveyed to the vendee the fee simple title to the land free from all incumbrances and that he accepted the same, is good in bar of the action.

Error to the Circuit Court of Marengo.    Tried before the Hon. Geo. D. Shortridge.

This was an action of debt on a title bond by the defendant against the plaintiffs in error.   The bond was executed by one James Martin and Sarah Martin, the latter being now the wife of Malaleel Johnson, her co-plaintiff in error, and is conditioned to make title in a reasonable time to a tract of land in Marengo county.   The declaration commences "John Collins,

plaintiff, complains of Malaleel Johnson and his wife, Sarah Johnson, formerly Sarah Martin, defendants in this suit," &c. and alleges that " the said defendant Sarah, together with one James Martin, who is not sued in this action, and before her intermarriage with the said Malaleel, heretofore, to-wit, &c. by her writing obligatory sealed, &c. acknowledged herself to be held and firmly bound to the plaintiff in the just and full sum of thirty-two hundred dollars, &c.; and the said plaintiff says that said writing obligatory was made with a condition thereunder written," &c. It then sets out the condition, which is that the said James Martin and Sarah Martin should " in a reasonable time" make to the said plaintiff or cause to be made to him ." a good and lawful title free from all incumbrances," &c. The declaration goes on to aver that the said James Martin, "and the said defendant Sarah, and the said defendant Malaleel since his intermarriage," have not regarded their said obligation, &c. but on the contrary " Sarah Johnson, formerly Sarah Martin, and her husband Malaleel Johnson, John Wesley Martin, Francis Martin, Laura A. Martin, Esther Elizabeth Martin and Sarah A. Martin, who at the time of making the said writing obligatory hereinbefore set forth and continually from thence until and at the time of the eviction, ejection, and expulsion hereinafter mentioned had, and who still have lawful right and title to the said premises with the appurtenances, did enter on the same in and upon the possession of the said tenements and ejected, expelled and removed the said plaintiff against the will of the said plaintiff, by due course of law from the possession," &c. By reason whereof, &c. Seven pleas were filed to the declaration, to each of which a demurrer was interposed. The defendants below asked the court to visit the demurrer on the declaration, but the court overruled the motion and sustained the demurrer to the seventh plea only. That plea avers that James Martin after the execution of the bond made and delivered a title and deed in fee simple for the land to the vendee and that he accepted the same, &c. By the *bill of exceptions*, it appears that the title-bond was introduced and proved and that after it was made the plaintiffs in error and John W. Martin and five other children of Peter Martin, deceased, sued Collins for the land and recovered it of him at the fall term 1847, of Marengo Circuit Court. There was no proof that Collins had

ever demanded title of Sarah Martin (Johnson) or her husband, or had prepared and tendered a deed to be signed. It was admitted that one-seventh part of the land belonged to said Sarah, and it was proved that some of the children of Peter Martin were at the time of the making of the bond and still are under age. Whereupon defendants (below) asked the court to charge the jury that unless it appeared from the evidence that the plaintiff (Collins) had demanded a conveyance, or had prepared and tendered a deed to be signed—he was not entitled to recover in this action, which charge the court refused. To the rulings of the court the defendants excepted and now assign them as error.

BROOKS and VARY, for the plaintiffs in error:

1. The declaration is defective and the demurrer should have been sustained to it. The allegation is that Sarah Johnson made the bond "*before her intermarriage with*" her present husband. But the husband is liable for those debts and engagements of the wife only which were made while she was *sole and unmarried;* he is not liable for debts contracted by her during a former marriage.—Clancy on H. & W. The declaration should contain all the facts necessary in point of law to sustain the plaintiff's action, and they should be set forth with certainty.—1 Chitty Pl. 244. Therefore the omission to state that the wife made said bond while *sole*, is fatal. Every thing shall be taken most strongly against the party pleading; as for instance, if the words be equivocal they must be construed most strongly against the pleader.—1 Chitty Pl. 237; Tanner v. White, 15 Ala. 798.

2. A declaration on a title bond for a failure to make title, which neither avers that the plaintiff demanded a title of the vendor nor that he prepared and tendered a deed to the defendant and demanded its execution, is fatally defective.—Johnson v. Beard, 7 Smedes & Marsh. 214; 1 Chitty Pl. 330-34.

3. The recovery in ejectment of the lands from the plaintiff below and his eviction, are not a breach of the bond and do not excuse the vendee from the duty of preparing a deed and demanding its execution. The bond does not show that the obligors sold the land to the obligee—nor do the obligors stipulate for title in themselves at the time of the execution of the

bond or for the possession and quiet enjoyment of the land by the obligee. The terms of the bond conclusively show that the obligors had no title, or rather not a perfect title at the time of its execution. But if the obligors had title they had a right notwithstanding their bond to maintain ejectment against the obligee and expel him.—Haley et al. v. Bennett, 5 Port. 452; Chapman v. Glassell, 13 Ala. 50. And surely the assertion of that *right* would not subject them to an action for damages.—See, also, 10 Ala. 883; Sugden on Vendors, 281-85.

4. The demurrer to the *seventh* plea should have been over-ruled. It alleges that James Martin made a conveyance in conformity to the bond and that the same was accepted in fulfilment of his obligation. Collins having accepted the deed could maintain no action upon the bond against Martin.—Creigh v. Berlin, 1 Watts & Serg. 83; Cronister v. Cronister, ib. 442; Houghtaling v. Lewis, 10 Johns. 306.

MANNING, for the defendant:

1. If under the terms of the contract in this case Collins was bound to demand a deed at all, he was not bound to do so if (as the declaration alleges) the title was in others—and the plaintiffs in error joined with those others in a suit by which he had been ejected and expelled from the premises. The law does not require the performance of a nugatory act.—Blann v. Smith, 4 Blackf. R. 517; Hunt v. Rives, 5 ib. 177; Hill v. Hobart, 4 Shepl. R. 164; 16 Maine.

2. Admitting as law the decision in Wade v. Killough, 5 St. & Por. 450, that the purchaser of land is bound to have the deed prepared and to tender it to the vendor to be signed, yet in that case the question was considered *abstractly*, or else with reference to the terms of the bond then before the court, by which the obligor was to "*execute*" titles, and upon a *specified* day. But in this case the obligors stipulate that they will "*make* or *cause* to be *made*" a good and lawful title,—Hill v. Hobart, 4 Shepl. 164, and that they will make it not after *request*, (as in the last cited case,) but "*in a reasonable time.*" Collins had no right to say *when* it should be made. But he having paid for the land they agree in effect to procure the title and *make* or cause it to be made to him in such "reasonable time" as they should need for the purpose. They must at least procure the

title and furnish him with an abstract of it, before he can be required to prepare the deed. Instead of which they confederate with others who have title, and put him out of possession. Sugd. on Vend. Ch. 9, § 1, p. 447-520; Dearth v. Williamson, 2 Serg. & R. 498-500-1; Tinney v. Ashley, 15 Pick. R. 546.

3. Issue was taken on the third plea, which avers a readiness and willingness of the defendants to make title, and the defendants having had the opportunity to make good that defence and failing to do so, the defect in the declaration, if it be one, should not be made a ground of reversal.

4. The fifth plea alleges simply and singly that James Martin had made and delivered to Collins a title and deed in fee simple to the land, and that Collins had accepted it in discharge and satisfaction of the bond; and thereupon issue is taken. And then the seventh plea repeats the same averments about the delivery and acceptance of a deed conveying a good and lawful title free from all incumbrances, in compliance with and as a fulfilment of the stipulations in the bond; after which it is further alleged that Collins released Martin of and from his deed and the covenants therein contained. But this does not make the seventh plea differ in substance or legal effect from the fifth, and the plaintiffs in error having had a trial and the verdict of a jury upon a *special* plea, which not only "tolerated" evidence that would be necessary to support this seventh plea, but did not "tolerate" any *other* evidence than such, have not been injured.

5. In regard to the refusal to charge, as shown by the bill of exceptions, it is plain there is no error. The charge asked and refused was not that plaintiff below ought not to recover for the *one-seventh* part that belonged to Mrs. Johnson, but that plaintiff below was not entitled to recover *at all* in this action, notwithstanding the covenants in the bond had never been performed, and the defendants below had united with others *to put* the plaintiff out of possession.

CHILTON, J.—The plaintiffs in error, who were the defendants below, were sued in an action of debt upon a title bond executed by one James Martin and the defendant Sarah, then called Sarah Martin. The defendants pleaded several pleas, to one of which, the seventh, a demurrer was sustained and they

ask that the demurrer be visited upon the declaration, but which as to it was overruled by the court, and the first question which claims our consideration is whether the court properly overruled the demurrer. The first objection to the declaration is that it does not aver the marriage between Sarah Martin and the defendant Johnson, and that it fails to show that Sarah was *sole* when she entered into the contract upon which the action is brought. The declaration. commences—"John Collins, plaintiff in this suit, complains of Malaleel Johnson and his wife, Sarah Johnson, formerly Serah Martin, defendants in this suit, in a plea that they render unto him," &c. It then proceeds, "For that whereas the said defendant Sarah, together with one James Martin who is not sued in this action, and before her intermarriage with said Malaleel," on &c., at &c. signed, sealed &c. the agreement sued on which is set forth. In assigning the breach the declaration again alludes to the marriage thus: "And the said plaintiff in fact saith that the said James Martin and the said defendant Sarah, and the said defendant Malaleel since his intermarriage, have not regarded their said obligation so by the said James Martin and the said defendant Sarah made as aforesaid, and have not made or caused to be made to the said plaintiff a good and lawful title free from all incumbrances to the said tract of land in the said bond described, &c. We think this declaration sufficiently shows the character in which the defendants are sued and the grounds upon which the husband is sought to be charged. It is certainly true that the declaration must allege all the circumstances necessary for the support of the plaintiff's action.—1 Chitty's Pl. 254-5, and that if husband and wife sue upon a debt due to the wife *dum solu*, or are sued for a debt due from her and contracted while *sole*, the declaration must show that they sue or are sued as husband and wife, and that the demand accrued to or against the wife before the marriage, but a distinct averment in the declaration other than in the commencement and the breach is not required. The forms given by Mr. Chitty, vol. 2, p. 463-4-6, sufficiently indicate this to be the rule. The declaration in the case of Strickland v. Burns, 14 Ala. 511, did not conform to these precedents; for there neither the writ nor declaration mentioned the plaintiffs as husband and wife. So neither did the case of Tanner v. White, 15 Ala. 798; for in that the parties were not

sued as husband and wife, and the only intimation given by the court that they occupied that relation towards each other was in the breach. This was held insufficieht, but although this was a departure from the established precedents, I speak for myself when I say that I am strongly inclined to doubt the correctness of that decision, the declaration avering that the defendant, E. A. Read, made the note sued on while unmarried, and the breach stating that she did not pay it whilst unmarried, "*nor has either of the defendants paid it since their intermarriage.*" Whether this is not a sufficient averment on general demurrer, is a question which should it again arise, I should be disposed to look into. The declaration before us does conform to the precedents above refered to and which we regard sufficient, except it does not aver that Mrs. Johnson made the bond while *sole* and unmarried, but merely that she executed it " before her intermarriage with said Malaleel." We do not think that the pleader was bound to go on and negative every matter which might have rendered her incapable of entering into a valid contract—such as that she was sane, had attained the age of twenty-one, or that she was *sole*. We must intend she was *sole* at the time of her intermarriage with the defendant Johnson, and the declaration avers that she executed the bond sued on before that period.—See Evans v. The State Bank, 15 Ala. 84-5.

There is, however, another question which remains to be considered, and which is not wholly free from difficulty. We allude to the point raised by the defendants not only in the form of an objection to the count, but also in the form of instruction from the court to the jury, in respect to the tender of a deed and demand of title on the part of the plaintiff below. The condition of the bond is that that the obligors make or cause to be made to the vendee within a reasonable time a good and lawful title free from all incumbrances. In Wade v. Killough et al. 5 Stew. & Por. 450, it was held that one who becomes the vendee of real estate and takes a bond for title is bound to prepare and tender a conveyance to the vendor; and further, that if the vendee desires an abstract of title to enable him to prepare the conveyance, it is his duty to demand it of the vendor. We are not aware that this decision has ever been departed from in this court, and we think it conforms to the set-

tled doctrine in this country.—7 Smeeds & Marsh. Rep. 214. This the vendee has not done in the case before us. But it is insisted that the fact alleged in the declaration, that the vendee has been ejected by the vendor and others in an action of ejectment, dispenses with demand of title and puts the vendee in default. We do not think so. The declaration fails to show that the vendors cannot make or cause to be made a good title. In equity the vendee is considered the owner of the land, but at law the vendor before he makes a conveyance is the owner. He may bring ejectment against him and turn him out of possession, and the vendee must file his bill for a specific execution or a rescision of the contract, as the circumstances may justify. The recovery in ejectment is not a breach of the bond, if the vendor has not otherwise been put in default. The vendor being regarded in the light of a mortgagee, is by his action but asserting one of the several remedies afforded the mortgagee as a means of realising his debt. This is sufficiently shown by the cases of Haley et al. v. Bennett, 5 Por. Rep. 452, and Chapman v. Glassell, 13 Ala. 50; see, also, Sugden on Vendors, 248; Archbold's Law of *Nisi Prius*, 320. It is very clear then that the institution of the action against the vendee and his eviction by the vendor does not dispense with demand of title and the tender of a deed. *Non constat*, but the vendor would have made a title or have caused one to be made had the vendee demanded it, and that a great while has elapsed since the execution of the bond does not dispense with the necessity of action on the part of the vendee in putting the seller in default. But it is insisted that we ought not to reverse for this insufficiency in the declaration, because the defendant had the benefit of the same matter under a plea putting directly in issue the ability and readiness of the obligors in the bond to make title and the failure of the plaintiff to tender a deed. This position of the learned counsel cannot be upheld as a legal proposition. Had the declaration avered a tender of a deed to be signed and a refusal being a necessary averment, the *plaintiff* would have been required to prove it. If having made no tender he seeks to excuse his failure by an averment of the inability on the part of his vendors to comply, then this negative averment becomes material to his action, constitutes one of the grounds upon which it rests, and devolves upon the plain

tiff the *onus* of making good the averment by at least *prima
facie* proof. Mr. Greenleaf lays down the law to be, that
where the establishment of a negative fact is an essential ele-
ment in the plaintiff's cause, he takes upon himself the burden
of proving such fact not by plenary but *prima facie* proof.—1
Greenl. Ev. § 78, (3d edit.) Overruling the demurrer and
putting the defendant to his special plea, transfered the burden
of proof from the plaintiff to the defendant, and thus imposing
on him the proof which he would not otherwise be required to
make, the legal intendment is that he was prejudiced thereby.
We cannot therefore undertake to say the party was not in-
jured by the action of the court upon the demurrer. It does
not appear but that he *may have been*, and in such cases the rule
established by this court requires us to reverse.—Haggerty v.
Bradford, 9 Ala. 567; Falls v. Weissinger, 11 ib. 802; Morrison
v. Judge et al. 14 ib. 182; Ex'rs of Robertson v. Allen, 16 ib. 106.
There is nothing shown by the declarations in this case which
takes it without the rule laid down in Wade v. Killough (5 St.
& Por. 450.) There, as in this case, the undertaking to con-
vey a good title was absolute. In that, the parties fix upon the
time for the conveyance; in this, upon a reasonable time. We
do not see how this difference can affect the application of the
rule, for what shall constitute a reasonable time can as well be
determined upon by one of the parties as the other. Both that
case and this are altogether distinguishable from the case of
Williams v. Harper, 1 Ala. Rep. 502, in which the vendor
agreed to make titles &c. by a stipulated time (25th Dec. 1837,)
"provided the defendant should succeed in making good his
claim to said land; and if he should be satisfied by the first day
of April then next of the validity of his claim to the same, he
was then (April 1837) to execute his bond for title. But if he
failed to make good his title by 25th Dec. 1837, then he bound
himself to pay $2500, with interest" &c. Here the obligation to
make a title depended on a contingency known peculiarly to the
vendor, and the court very correctly held that if he would avoid
the payment of the $2500 on the ground that the vendee had ten-
dered no deed, he should have notified him of the happening of
the contingency. Here, the party *absolutely* engages to make
or cause to be made a good title &c. These remarks are
applicable to the declaration, for that, as we have seen,

shows no excuse for failing to make a demand of title, or for not tendering a deed, the recovery against the vendee not being sufficient to dispense with such demand and tender. When we come to the facts of the case upon which the charge was asked, we are advised that the vendors had but one-seventh interest in the land, and that the other six-sevenths were in the heirs of Peter Martin, some of whom are infants—from which it would appear that no title, such as required by the bond, could have been made by the vendors to the purchaser. The question then arises, upon the charge asked for by the defendants and refused by the court, is it necessary to make a demand of title and tender of a deed to be executed by the vendor, when it is clear that they cannot convey such a title as the bond stipulates they shall convey. The purchaser is entitled not only to a deed, but to a deed which shall convey a title free of all incumbrances, and for this the bond itself provides.—Cullum v. The Bank, 4 Ala. 21; Hunter v. O'Neal, 12 ib. 37. The vendors have had twelve years since the execution of the bond to procure title, and none has been procured. Now we do not think the law requires of a purchaser to tender a deed to be executed, when if executed he may refuse to accept it; nor is a demand in such case necessary, since it must prove equally vain and useless, the party being wholly unable to comply. The law will not make the rights of parties to depend upon such unmeaning ceremony— will not require him to do that which will be vain and fruitless when done. "*Lex neminem cogit ad vana seu inutilia,*" is the maxim, alike consonant with law and common sense.—Broom's Legal Maxims, 117, note k. We conclude therefore that if reasonable time had elapsed for the vendor to perfect her title and she had failed to do so, and at the institution of this suit she was utterly unable to make or cause to be made a good title, such as the bond requires, there was no necessity for demand of title or tender of a deed.—Blann v. Smith, 4 Blackf. R. 517; Garnett v. Yoe, ante 74. The refusal of the court to give the charge requested was therefore correct.

As to the seventh plea, it is perhaps unnecessary that we should say more than that in our judgment it is legally sufficient to bar the action. The plea asserts that after the making of the bond declared on, "James Martin by deed *conveyed the fee simple title to said land free from all incumbrances to the plaintiff,*

and that said deed was accepted by said Collins as a full compliance with and fulfilment of the stipulations of said bond, and that afterwards said Collins released and discharged said Martin of and from said deed of conveyance and all the covenants therein contained," &c.   The averment of release from the covenants in the deed is perhaps unimportant, as the plea would be good without it, but it at most is surplusage.   It is too clear to admit of argument, that this plea avering as it does a complete compliance with and fulfilment of the condition of the bond, in the conveyance by the vendor and acceptance by the vendee of the title contracted for, is unquestionably good, but we should not be disposed to reverse for sustaining the demurrer to it, were the declaration sufficient, since there were other pleas upon which the party might have made and did make all the defence he could have made under this : Pleas which required less proof to sustain them than would have been required in support of this, but of the same kind.   Be this as it may, the case must be reversed and remanded for the insufficiency of the declaration—and the parties can be allowed to amend their pleading.

Judgment accordingly.