## READ vs. WALKER.

1. Where a vendee of land, who has paid the purchase money, and, by the terms of the bond, has a present right to the title, files his bill to rescind the contract, and for an account of the purchase money paid, &c., the general charge, that the defendant has no title to the land, that it is encumbered with the dower of the wife of D., one of the previous owners, and that it will be impossible for the defendant to procure a title for many years to come, makes out at least a *prima facie* case of equitable cognizance, and is sufficient to require the defendant to answer.

2. Where the vendor has no title, and cannot procure or cause one to

Read v. Walker.

be made, the law does not impose on the vendee the useless ceremo-ny of preparing and tendering a deed, before he can apply to a court of equity for a rescision of the contract, since he would not be bound, under such circumstances, to accept the deed, although the vendor should be willing to execute it.

3. Where a vendee of land seeks by his bill a rescision of the contract, and an account for purchase money paid, and improvements, an averment, that, in the event of a rescision of the contract, he will lose a considerable portion of the purchase money, and of the amount due for improvements, if he is compelled to abandon all recourse upon such interest in the land as the vendor has, and to trust to the personal responsibility and solvency of the vendor, shows a sufficient excuse for the retention of possession.

4. The false representation of the vendor, as to the existence of a ma-terial fact, constituting an inducement to the contract, and upon which the vendee relied, and had a right to repose, in concluding the purchase, entitles the latter to rescind the contract in a court of equi-ty, although the vendor may not have known that such representa-tion was false; for, as his ignorance does not avert the injury, so neither does it destroy the remedy.

5. But, whether in that case the vendee should be allowed to rescind without first abandoning possession—QUERE?

6. The chancellor correctly refused to open a decree predicated on the defendant's default, when the only ground set up in the petition for a re-hearing was that the defendant neglected to appear and answer in obedience to the subpœna, under the supposition, that the case would merely be docketed at the first term of the court and stand for trial at the succeeding term.

ERROR to the Chancery Court of Benton. Tried before the Hon. David G. Ligon.

J. B. MARTIN & BELSER, for the plaintiff:

1. The statements and allegations of the bill must show that the Chancery Court had jurisdiction, and that the com-plainant was entitled to the relief prayed. In this case the com-plainant seeks a rescision of the contract, without abandoning possession, and therefore, must not only show a demand of title, or an inability on the part of the defendant to make it, but that there was fraud on the part of the latter, or that he was insol-vent. The existence of these facts, constituting as they do, the foundation of the complainant's suit, must be positively stated.—Story's Eq. Pl., §§ 28, 244-55-6-7 ; Lord Uxbridge v. Stave-land, 1 Vesey, sen. 56 ; Mitford's Eq. Pl., 163; Barbour's Ch. Practice, 36; Spence v. Duren, 3 Ala. 251 ; 4 Gill & John-

Read v. Walker.

son, 7 ; Hawley et al. v. Wolverton, 5 Paige, 522 ; Hartwell v. Blocker, 6 Ala. 581 ; Latham v. Morgan et al., 1 S. & McC. 611.

2. The representations imputed to the vendee in reference to his title by complainant's bill, must be construed to have been matter of opinion. Fraud is never infered, if any other reasonable construction can be placed upon the acts or declarations of a party.—French v. Garner, 7 Port. 549 ; Kennedy's Ex'rs. v. Kennedy's Heirs, 6 Ala. 604 ; Spence v. Duren, 3 ib. 251 ; Steele v. Hinkle, 3 ib. 358 ; Latham v. Morgan et al., *supra*.

3. There being no sufficient allegation that the vendor was unable to make titles, the vendee should have tendered to the vendor a deed, and made a demand for titles, when he would have had the right to have required an abstract of the latter's title, by an examination of which, he might have determined advisedly as to their character and sufficiency.—Sugden on Vendors, 182 ; Seward v. Willock, 5 East. 198 ; Wade v. Killough, 5 Stew. & P. 450 ; Smith v. Robinson, 11 Ala. 840.

4. A vendee who seeks to rescind a contract of sale while he retains the possession, and enjoys the benefit of the contract, should, in the absence of fraud, show that the vendor is insolvent, and this being necessary, must be charged.—Duncan v. Jeter, 5 Ala. 604 ; Long & Long v. Brown, 4 ib. 622 ; Barnett v. Gaines et al., 8 ib. 373 ; Parks v. Brooks, 16 ib. 529.

5. Insolvency is neither charged, nor is it the legitimate inference from the facts stated.—Story's Eq. Pl., § 256 ; Spence v. Duren, *supra;* Parks v. Brooks, *supra;* James v. McKenan, 6 Johns. Ch. 544 ; Latham v. Morgan et al., 1 S. & McC., 611.

6. The re-opening of a cause, for the purpose of permitting a party to defend, is a matter of sound discretion with the chancellor, and the record shows that it was improperly exercised under the circumstances.—1 Johns. Ch. 539 ; 2 Bro. Ch. 279.

Rice & Morgan, for the defendant :

1. Even where a conveyance has been accepted by the vendee, he may resort to chancery for a rescision of the contract, and a return of the purchase money paid, when a fraud has been committed upon him by the false representation of the vendor, that he had title, when he had none, without abandoning the possession.—Greenlee v. Gaines, 13 Ala. 198 ; Buchanan v. Alwell, 8 Humph. 516.

2. "Nothing is more common than for courts of equity to set aside contracts for material misrepresentations upon which the purchaser has relied to his detriment, and on which he had a right to repose, even though such misrepresentations were made through mistake, inadvertence, or ignorance. They are considered as constructively fraudulent, because their effect has been to impose upon and deceive the purchaser." "He who affirms either what he does not know to be true, or knows to be false, to another's prejudice and his own gain, is, both in morality and law, guilty of falsehood," and must answer for it.—Munroe v. Pritchett, 16 Ala. 785 ; Tucker v. Woods, 12 Johns. 190.

3. In every such case as is made by the bill, the purchaser may either bring his action at law, or file his bill for relief. But the bill in chancery is the better remedy, as it may "enable the court to create a trust in favor of the injured purchaser."—Cullum v. Bank, 4 Ala. 35, and cases there cited; Camp v. Camp, 2 ib. 632; Young v. Harris, 2 ib. 108; Buchanan v. Alwell, 8 Humph. 516.

4. In such a case as this, abandonment of possession is not a pre-requisite to the vendee's right to relief, and if any excuse for not abandoning the possession is necessary, it is sufficiently given in the bill. The allegation as to the pecuniary condition of the defendant, is, when taken with the other allegations in the bill, equivalent to an allegation of insolvency of the vendor—it is a much stronger allegation on that subject than that made and held good by this court, in Graham v. Tankersly, 15 Ala. 634.

5. The refusal of a new trial, or re-hearing by the chancellor, is not revisable by the Supreme Court.—Walker v. Blassingame, decided June Term, 1850.

CHILTON, J.—This bill was filed by Clement Walker against Edwin T. Read, and avers that the complainant, together with Irby Wynn, purchased of the defendant the west half of section fourteen, in township sixteen, in range twenty-seven; also, the west half of the south-west quarter of section twenty-three, in the same township and range, at the price of five thousand dollars; that complainant and Wynn gave their two notes for the purchase money to Read, each for one half of said sum, one due 25th Dec. 1846, the other a year after that period, which notes have been collected by law from the complainant

by Read; that complainant purchased out Wynn's interest in said land, and that Read executed his title bond to the said complainant and Wynn, and has never made them a deed for the same. The bill avers that at the time of the purchase of the land from Read, complainant and Wynn were wholly ignorant of the condition of the title of Read, but that their vigilance was lulled to repose, and their inquiries on that subject silenced by the representations of said Read, that he would make, or cause to be made to them, good and sufficient *bona fide* title in fee simple to the same, when they should pay the purchase money; and that, being ignorant of the inability of said Read to make, or cause to be made to them, any such title, as he represented he could and would make, they confided in, and relied on the representations of said Read, and were thus induced to purchase said land at said price, which was the full value thereof, and more than it is now worth, having since depreciated in value; that had they known of the want of title in Read, they would not have concluded the purchase; that since the purchase complainant has made many valuable improvements on the land; that complainant and Wynn did not ascertain, until after the purchase money was fully paid, that Read could not make such title as he had stipulated to make by his bond, and as he represented he could make; that he has no legal title to the land; that his pretended claim is disputed by others, who claim adversely to him, and is clouded with doubts, difficulties and incumbrances, and that it is impossible that he can, for many years to come, acquire any valid legal title to the same. Complainant charges (not as facts within his knowledge, but upon information and belief,) that the title to the land is in the Government of the United States; that said Read claims, either mediately or immediately, through a company associated for the purpose of speculating in lands, whose member's names are given, and who resided in the State of Georgia; that this company pretended to have purchased from Creek Indian reservees, under the treaty of 24th March 1832; that two of the members of said company have departed this life, leaving widows and children of very tender years; that the widows and minor heirs of the deceased members claim dower and interests in said land, and that in consequence of conflicting claims to the same, no patent has issued to any one. It is also avered that Read is willing to execute a deed, but the bill

charges that complainant is unwilling to accept any conveyance, because (if he have any title,) it is defective and imperfect. and clogged with claims for dower and other incumbrances, and opposed by other conflicting claims made in behalf of minors and others, and the said Read has no such title as by his bond he bound himself to make. Complainant, therefore, has deemed unnecessary to make any more formal demand of title from him; that he does not pretend to exact accuracy in the matters above stated, upon information and belief, but he has stated what he believes, and all that he can learn as to the condition of the title to said land, and that the several matters above set forth are within the knowledge of Read.

It is further alleged "that in the event of a rescision of said contract, (which is prayed by the bill,) complainant will lose a considerable portion of said purchase money, and the amount which will be due him for valuable improvements made by him on the land, if he is compelled to abandon all recourse upon such interest as Read has in it, and to trust to the personal responsibility and solvency of Read, whose property, aside from his interest in said land, is not of sufficient value to pay his debts and to enable him to respond to the complainant for the purchase money and the value of the improvements made by him, and that in the event of a rescision, complainant has just reason to fear, and does fear, that he shall lose, in whole or in part, the benefit of the court's decree, unless a lien is decreed upon the land for its satisfaction.

The bill then prays for a rescision, the ascertainment of the amount due complainant for purchase money, and improvements, and that a lien be decreed upon Read's interest in the land for the satisfaction of such amount, unless paid by Read, and for general relief.

The bill was filed 10th May 1849, and a subpoena, issued on the same day, was duly executed on the defendant on the 10th day of June, following. On the 16th July, of the same year, a decree *pro confesso* was duly entered in the Register's office against Read for failing to answer. At the succeeding term of the Chancery Court, the chancellor decreed a *rescision* of the contract, and that an account be taken of the improvements and purchase money, as also of the rents and profits, reserving other questions until the coming in of the report. This decree was

temporarily suspended by order of the chancellor in vacation, upon a petition for re-hearing, but at the succeeding term the motion to re-hear was denied.   We have thus carefully refered to the allegations of this bill, for the reason that it is very ingeniously and ably contended before us, that admitting them to be true, as the default of Read, and the decree *pro confesso* predicated upon it, required the chancellor as well as this court to regard them, still they do not set forth sufficient equitable ground to justify a rescision of the contract.

The main objection insisted on against the bill is, that the vendee retains the possession, and seeks to avoid the sale, but does not make any sufficient averment of either fraud on the part of the vendor, or that he is insolvent.

The bill, it is true, is not very artificially drawn, and many of its allegations, which might as well, perhaps better, have been omitted, are vague and uncertain, but still it is impossible to say that, admitting all its allegations, a ground for equitable relief is not made out.   It shows a compliance on the part of the complainant with his part of the contract.   He has paid the purchase money in full, and title is due him to the land.   It is then substantially avered, not only that the vendor made untrue assertions at the time of the contract as to his ability to make title, but that even up to the time of filing the bill he had no legal title, but that the same was in the United States, and claims were asserted for dower on the part of the widows of two persons, through whom the defendant claimed.   It is, however, unnecessary to repeat the facts.   There having been no answer or demurrer, but the bill having been taken as confessed on personal service, we are not disposed to look nicely into the form in which the allegations are made.   We think, they are substantially sufficient.   We concede the correctness of the rule laid down in Spence v. Duren et al., 3 Ala. 251, that the facts upon which a discovery is sought, and the action of the court, which the complainant demands, must be stated with reasonable certainty and precision, and the allegations, upon which the complainant founds his title to relief, must be direct and positive, and not uncertain and inconclusive, before the defendant can be put to his answer.   But, we think, there is a marked difference between the allegations of that bill and this.   In that, there was no allegation of any false representations, made on the

23

part of the vendors. Complainant avered that he was induced to believe that they had a regular chain of title in an incipient stage. The bill failed to show that they had not. They represented to him that they would be able to make him title upon the maturity of the notes given for payment of the purchase money. They failed to show by their allegations that the vendors were unable to comply. They state that they were informed and believed that Duren & Copeland, were not the sole owners of the land, but that the same was claimed in whole or in part, by Howard & Driver, but whether as co-partners with Duren & Copeland, the vendors of complainant, or with only one of them, and which, and to what extent they were interested, the complainant could not state, but he charged they were interested to some extent, and in some manner. It is perfectly certain that such allegations as these could never confer jurisdiction; for they do not show but that the vendors could make or cause to be made a good title. Howard & Driver might have been interested as partners with one or both of the vendors, and yet the legal title have been in the vendors, and their deed, under the partnership arrangement, have vested the complete title, both at law and in equity. The case before us is quite different. Here it is expressly charged that the vendor's title is defective and imperfect, and clogged with claims for dower, and other incumbrances, and that the vendor has no such title as he bound himself by his bond to make, and this, as we have said, is admitted to the fullest extent by the defendant. That the complainant, in endeavoring to trace out the specific incumbrances, and the difficulties in the way of the defendants getting a title, sets forth the same as derived from information, and which information he believes, does not render this bill defective. The general charge that the defendant had no title, that it was incumbered by dower asserted on the part of the wife of Dillingham, and that it would be impossible for the defendant to procure title for many years to come, makes out at least a *prima facie* case of equitable cognizance, and sufficient to require the defendant to answer. And if these facts are true, there was no necessity for tendering a deed, or for demanding title. The rule is, that where the vendor has no title, and cannot procure or cause one to be made, as the preparation of a deed, and the demand of title, would in such case be nugatory, (the vendee being

Read v. Walker.

under no obligation to accept the deed, even though the vendor is willing to execute it,) the law dispenses with such useless ceremony.—See Johnson & Wife v. Collins, 17 Ala. 318. Had the defendant appeared in the court below, it would have been competent for either party to have moved a reference to the master to ascertain whether a good title could be made, and if it had been made to appear to the court, that although the party defendant was not then able to make a title, yet that he could have completed his title in a reasonable time, and have been able to comply with the condition of his bond, we will not say but that it would have been proper for the chancellor to have afforded him a reasonable time.—Blythe v. Elminhirst, 1 Ves. & Beame, 1, 3; Frost v. Brunson, 6 Yerg. 36, 40. But nothing of the kind was attempted here, and the incapacity to make title being admitted by the default, the chancellor could not have done otherwise than to decree a rescision, if the retention of the possession by the vendee does not deprive him of the right to ask for a rescision. This depends, first, upon the fact whether the vendor is insolvent; for in that event the vendee is not bound to abandon the land, but may retain possession as a means for his indemnity, having paid the purchase money; or second, upon the fact, whether the defendant by his representations defrauded the complainant. In either event, the retention of the possession is justified by numerous decisions of this court.

As to the first, the insolvency of Read is not charged in so many words, but the defendant must be considered as admitting that the " complainant, in the event of a rescision of the contract, will lose a considerable portion of said purchase money, and the amount that will be due him for his valuable improvements on said land, if he is compelled to abandon all recourse upon such interest in said land as Read may have, and to trust to the personal responsibility and solvency of said Read," for such is the allegation in the bill. This being admitted, we think it is a sufficient excuse for retaining the possession, aside from the other charge as to Read's inability to respond to this decree exclusive of his interest in this land, after the payment of his debts. The ground of the error in the argument of the plaintiff in error, consists in overlooking the general charges which are well made, and in objections to the allegations which attempt to be more specific, several of which are perhaps faulty, but which might be rejected

as surplusage, and still leave the bill good. It is, however, a mistake to suppose that a positive charge, such as correct pleading requires, may not be made upon information and belief. It will not do to allege that the party is informed that a material fact exists, without adding more, as if a bill is brought to charge a party as assignee of a lease, it will not be sufficient to aver that the plaintiff is informed by his steward that the defendant is such assignee. This tenders an issue as to the fact of his being informed, and not as to the fact of the assignment. But he must aver this latter fact positively, (i. e.) not that he knows it to exist, but that upon information and belief, he positively charges it does exist. This, I understand to be the meaning of the rule, as laid down and illustrated by Judge Story in his work on Equity Pleading, §§ 242 to 256, inclusive. As to facts not within his knowledge, it would be impossible for a conscientious complainant to aver them otherwise.

The view we take renders it unnecessary to elaborate the question of fraud. Upon this question, I will only add, that where a vendor makes a *false representation* as to the existence of a *fact*, which constitutes a material inducement to the contract, and upon which the vendee reposed, and had a right to rely, and without the existence of which he would not have entered into the contract, then as the ignorance of the party making such representation, as to its being false, does not avert the injury, it should not destroy the remedy. "The question," says Mr. Justice Story, "is, not whether he acted basely and falsely, but whether the plaintiff purchased upon the faith of the truth of his representations. If the plaintiff did so purchase, then upon the settled principles of courts of equity, the bargain ought to be set aside, as founded upon gross misrepresentation and gross mistake, going to its very essence and objects. "The whole doctrine," says he, "turns upon this, that he who misleads the confidence of another, by false statements in the substance of a purchase, shall be the sufferer and not his victim."— Doggett v. Emerson, 3 Story's R. 733; Hough v. Richardson, ib. 690. Such was our opinion in Monroe v. Pritchett, 16 Ala. 785, and that opinion is supported both by reason and authority. —See 1 Story's Eq. Juris. § 193; Foster v. Charles, 6 Bing. 396; Taylor v. Ashton, 11 M. & Welsby, 401; Ainsley v. Medlicott, 9 Ves. 21; Farnam v. Brooks, 9 Pick. 213; Graves v.

Read v. Walker.

White, Freeman's R. 57; Roosevilt v. Fulton, 2 Cow. 134; Pearson v. Morgan, 2 Bro. Ch. R. 389; per Lord Ch. Eldon in De Manneville v. Crompton, 1 Ves. & Beame, 355; McFerran v. Taylor, 3 Cran. 270; Burrows v. Locke, 10 Ves. 475; *Exparte* Carr, 3 Ves. & B. 108; Scott v. Scott, 1 Cox, 366; Daniel v. Mitchell, 1 Story's Rep. 172; Story on Contracts, (2 ed.) § 506 p. 422, note 1, where the numerous authorities are cited, and many of them ably commented on.   Judge Story asserts the doctrine thus broadly, "whether the party thus misrepresenting a material fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial, for the affirmation of what one does not know or believe to be true, is equally in morals and law as unjustifiable as the affirmation of what is known to be positively false," and he adds, "even if the party innocently misrepresents a material fact by mistake, it is equally conclusive, for it operates as a surprise and imposition on the other party."—1 Story's Eq. § 193.   The purchaser upon this ground would be entitled to rescind, but whether if the vendor was merely mistaken as to his representations, the vendee should not abandon the possession before he could invoke the aid of the court, is a question which we will leave open.

In respect to the petition for a re-hearing, the case having been partially disposed of, but retained *sub judice,* we think the chancellor very properly entertained jurisdiction of the motion, but it is certain that he as correctly overruled it.   To hold that a party may aver his *ignorance* of the law and the practice of the court, as a ground for setting aside its judgments and decrees, would be to place its sentences on very precarious grounds, and decrees could rarely be definitive of the rights of parties.   The plaintiff in error should have employed counsel in time to protect his rights, and not have waited until after a final decree was rendered against him, under the mistaken supposition that it would answer for him to appear at the second term of the court after it was executed upon him.   The subpœna, a copy of which was handed him, required his appearance before the Register to file his answer in thirty days from the date of its service.   He disregarded this, and as a consequence of his disobedience to the mandate of the court, the charges of the bill were taken as confessed by him, which, under our statute, dispensed with proof of their truth, and in our judgment fully justified the decree against him.   Let it be affirmed with cost.