## BLACKWILDER *vs.* LOVELESS.

1. The enforcement of the specific execution of a contract in a court of equity, is not a matter of right in either party, but a matter of sound, reasonable discretion in the court; and the court uniformly refuses to decree a specific performance, except in cases where such a decree would be strictly equitable.

2. It requires much less strength of case to enable the defendant to resist a bill for the specific execution of a contract, than it does on the part of the plaintiff to maintain his bill; for, if the bargain be hard and unconscionable, or, if the specific execution of it would, under all the circumstances, be inequitable, the Chancellor should refuse to decree a specific execution, and should leave the parties to their remedy at law.

3. Where the complainant, having recovered a judgment against defendant, in an action of unlawful detainer of certain lands in defendant's possession, worth $300, to which defendant claimed title, and on which he had a growing crop, and having a writ of restitution in the hands of the sheriff, procured defendant to enter into a contract, by which, in consideration of complainant's note for $30, and the retention of possession for the remainder of the year, a period of four months and a half, defendant promised to deliver up the land at the expiration of the year, and executed to complainant his bond for title, the specific execution of the contract was refused, and the bill dismissed at complainant's costs.

ERROR to the Chancery Court of Chambers.

Heard before the Hon. W. W. MASON.

This was a bill for a specific performance, by the defendant in error against the plaintiff in error. It alleges, that, a controversy existing between the parties respecting the title and right of possession to a tract of land, known as the south west quarter of section eighteen, township twenty-two, range twenty-five, in Chambers county, plaintiff below sued Black-

wilder in an action of unlawful detainer, before a justice of the peace, and recovered a judgment for the possession; that thereupon said defendant in the judgment filed his bill, and obtained an injunction against the execution of the writ of restitution, which bill was afterwards dismissed, and the injunction dissolved, at the cost of the complainant therein; that the writ of restitution was then again issued, and placed in the hands of the proper officer, but the said Blackwilder still claiming title, and having a crop growing on the land, it was mutually agreed between them, that Loveless should allow said defendant to retain the premises until the 25th of December, 1849, and pay him the sum of thirty dollars by the said 25th day of December, 1849, in consideration of which, said Blackwilder agreed to make to him a quit-claim deed to said tract of land; and that this agreement was understood as a complete settlement and compromise of their conflicting claims; that the complainant executed his note, and the said defendant his title bond, in accordance to said agreement, and the sheriff was thereupon instructed to return the writ of restitution unexecuted.

Complainant then avers the tender of the money, first in paper, which was objected to, and then in gold and silver, and its refusal by defendant, who retains possession of the land, and is attempting to rent it to others, and refuses to execute a quit-claim deed agreeably to his bond. The bill prays an account of the rents and profits, and that the contract be specifically executed, &c.

The defendant, in his answer, admits the recovery in the suit of unlawful detainer; that he filed a bill and enjoined it, which bill and injunction was afterwards dismissed at his cost; but he insists that the judgment for the possession of the land was unjust; that complainant, before 1845, had purchased the land of one Jones, for $600, and paid $150 of the money, giving his notes to Jones for the remainder, ($450,) but after the notes became due, he (complainant) proposed to Jones to lose what he had paid, if Jones would cancel the contract, and release him from the payment of the notes; that this was agreed to, and the contract was thereupon rescinded; that defendant, being informed and believing that the contract was rescinded, agreed and contracted with Jones

for the purchase of said land, in 1845, for the sum of $300, and executed his notes for that sum to said Jones, and took from him his title bond, conditioned to make him title to the same; that he entered into possession under his contract, when the complainant claimed to hold the land until Jones should repay him the $150 which he had paid on the rescinded contract; that defendant, being anxious to retain the possession of the land, agreed with Loveless that he would pay him rent for the land, in the event he should be able to recover it from Jones by legal proceedings; that matters stood thus until March, 1848, when Loveless, without instituting any proceedings against Jones, sued out his writ of unlawful detainer, and obtained judgment; that he never notified the defendant to quit the possession of said land, until he (defendant) had paid to Jones the purchase money for the same; that, after the injunction obtained by the defendant against the judgment in the unlawful detainer case was dissolved, complainant caused his writ of restitution again to issue; that he claimed title to the land, and had a crop growing upon it, at the time he signed the bond referred to in the bill, which was worth some $300. He denies that he entered into the agreement, as a compromise, but insists that, being a poor man, and some seventy-six years old, he did so to save his crop, which would have been a total loss to him had the plaintiff obtained possession, as he could have recovered nothing from the plaintiff by way of damages, by reason of his insolvency. The land, at the time of the agreement, is averred to have been worth from three to five hundred dollars, and was sold by the defendant for thirty dollars, on account of plaintiff's threatening to dispossess him. He avers, that he took the note of the plaintiff for that sum, which has neither been paid nor tendered to him; avers that the plaintiff was insolvent and unable to raise that sum; admits that he, the defendant, has not much property, but says he believes he is able to pay any damages which a jury would assess against him by reason of his refusal to convey, and insists that said agreement was forced upon him, and that it is iniquitous and unjust.

William H. Smith, the sheriff of Chambers county, was examined on part of the complainant, and he states, that the

writ of restitution was placed in his hands as sheriff to be executed; that Loveless told Blackwilder, unless he made some arrangement he would dispossess him immediately, upon which the parties entered into a compromise, and a note and bond were executed as charged, the said sheriff witnessing the bond, which he designates as a quit-claim deed.

Willis C. Shipp, another witness for the complainant, states, that he wrote the bond by the direction of the complainant; and said bond and note were executed and delivered, and the sheriff ordered to return the writ of restitution satisfied, except as to the cost; says that Blackwilder, he supposes, was about seventy years old; witness did not hear the contract made, and only saw the writings executed; heard no inducements or threats held out by Loveless to compel the said defendant to execute the contract.

It was admitted, by the written consent of the counsel, that, had Loveless tendered the specie to defendant before filing the bill, it would have been refused, and that the quit-claim deed mentioned by Smith was the bond, the execution of which he proved.

Upon this proof, the Chancellor decreed a specific execution of the contract, which decree is assigned for error in this court.

ALLISON, for the plaintiff in error.

FALKNER, contra.

CHILTON, J.—It is said, the enforcement of the specific execution of contracts in a court of equity, is not matter of right in either party; but it is a matter of discretion in the court; not, indeed, of arbitrary or capricious discretion, dependent upon the mere pleasure of the judge, but of that sound and reasonable discretion, which governs itself, as far as it may, by general rules and principles; but, at the same time, withholds or grants relief, according to the circumstances of each particular case, when these rules will not furnish any exact measure of justice between the parties. 2 Story's Eq. Jur. § 742, and cases cited by this author in note 1, p. 58, Vol. 2, 5th Ed.

The court uniformly refuses to decree a specific perform-

ance, except in cases where such decree would be strictly equitable. Ib. § 750.

It requires much less strength of case to enable a defendant to resist a bill to perform a contract, than it does on the part of the plaintiff to maintain such bill; for, if there be any fraud or mistake, or if the bargain be hard and unconscionable, or the specific execution would, under all the circumstances, be inequitable, the Chancellor should refuse to decree the specific execution of the agreement, and leave the parties to their remedy at law. 2 Story's Eq. § 769, and cases cited, p. 92, n. 1, 5th Ed.

The complainant shows no title to this land. He seeks that which the defendant has. The land is worth at least three hundred dollars; and armed with a process which would turn the defendant out and sacrifice his growing crop, he is enabled to dictate terms to him, and procures the bond for title, in consideration of the promise of thirty dollars, and the retention of the possession from the 8th August, 1849, until the 25th December, 1849.

We cannot resist the conclusion, that this old man did not enter into this contract voluntarily. The writ of restitution was held *in terrorem* over him, and he was immediately to be turned out unless he came to terms. He was not in a condition to deal at arms-length with the plaintiff, nor to insist upon a fair and equitable bargain. Having shown the circumstances under which he executed the bond, it was incumbent on the plaintiff, who invoked the exercise of the court's discretion in his behalf, to show that he had not extorted an unreasonable bargain ; that he had given a just compensation for this land, and was equitably entitled to it. Otherwise, it was the duty of the court to leave the parties to their remedy at law.

We will not say there was any fraud or mistake in this case; but we are satisfied that the defendant did not deal with the plaintiff on equal terms, and that, by reason of the peculiar condition in which the defendant was placed, the plaintiff was enabled to get his bond for title for a very inadequate consideration.

True, the parties speak of this as a compromise. It matters not by what name they call it; the facts show, that it was

a sale by defendant of his interest in the land for thirty dollars, secured by note, possession to be given after the expiration of some five months: plaintiff in the mean time agreeing not to turn the defendant out by virtue of process, not predicated upon the title to the land.

We think, it is just such a case as the parties should be left to their legal remedies. The decree must be, therefore, reversed, and a decree here rendered dismissing the bill, at the cost of the defendant in error.