# GENTRY vs. ROGERS.

[BILL IN EQUITY FOR SPECIFIC PERFORMANCE OF CONTRACT FOR SALE OF LANDS.]

1. *Specific performance, as matter of discretion.*—Under bills for the specific performance of contracts, the chancery court exercises a discretionary power of granting or refusing its aid, not arbitrarily or capriciously, but upon a sound and temperate consideration of the facts of each particular case, as tested by existing rules; and if, under all the circumstances of the case, a specific performance would be inequitable, relief will not be granted.

2. *Same, as affected by offer to perform by plaintiff.*—If the vendor refuses to deliver the possession of the land on the demand of the purchaser, and refuses to accept payment of the first installment of the purchase-money when due and tendered, and declares that he will not comply with the terms of the contract, the purchaser may immediately sue at law for a breach of the contract, or seek relief in equity; but, if he fails to seek any legal redress until after the day stipulated for the payment of the residue of the purchase-money, the former repudiation of the contract by the vendor does not excuse him from showing an offer on his part, on the specified day, to perform all the stipulations of the contract.

3. *Same, as affected by laches.*—The purchaser in this case having been distinctly notified by the vendor, two years before the day fixed for the payment of the purchase-money, that he repudiated the contract, and having delayed to file his bill for a specific performance for about nine months after that day, and having shown no excuse for his delay,—the laches was held sufficient, in connection with his failure to

show a valid excuse for his omission to tender performance in full on the specified day, to deprive him of the right to relief.

4. *Decree reversed and rendered.*—The chancellor's decree in this case, granting a specific performance on the allegations of the bill and a decree *pro confesso*, having been reversed on account of the complainant's failure to show that he had done all the law required on his part to entitle him to such decreee, the appellate court refused to remand the cause, and rendered a decree dismissing the bill.

APPEAL from the Chancery Court of Russell.
Heard before the Hon. N. W. COCKE.

THE bill in this case was filed, on the 17th September, 1863, by Anthony F. Rogers, against Daniel H. Gentry, and sought the specific performance of a contract for the sale of a tract of land. The chancellor's decree in favor of the complainant, with other matters which require no particular notice, is now assigned as error.

WADDELL & McCOY, for appellant.
RICE & SEMPLE, with whom was GEO. D. HOOPER, *contra.*

JUDGE, J.—On the 29th of December, 1859, appellant sold to appellee a tract of land, for which the sum of thirty-two hundred dollars was to be paid; one thousand dollars on the 29th of December, 1860, and twenty-two hundred dollars on the 29th of December, 1862. Notes for the purchase-money were executed and delivered to the vendor, and a bond, conditioned to make a title to the land "upon the payment of the notes," was executed and delivered to the vendee.

The complainant in the court below, the vendee, filed his bill for a specific performance of the contract. The defendant failed to answer within the time prescribed, and a decree *pro confesso* was rendered against him, which he afterwards struggled, without success, to have set aside. The register, under an order of reference, stated an account between the parties, in which the vendee was charged with the purchase-money, and interest thereon, amounting in the aggregate to $4,231.13; and the vendor was charged with the rents and profits, and interest thereon, from the date of the sale to the time of taking the account, and with the

further sum of $2,000, as net profits from the sale of timber cut on the premises, all amounting in the aggregate to $4,797.94. This left a balance due the complainant of $566.81. The report of the register was confirmed, and the chancellor decreed a specific performance, and that the balance ascertained to be due the complainant should be paid.

Before the order of reference was made, the defendant filed his written notice, that if any decree should be rendered in his favor for the purchase-money, or any part thereof, he would be unwilling to receive anything in payment but gold and silver; and, in consequence of this notice, the chancellor, in the order of reference, directed the register to ascertain "the annual value in specie, or its equivalent, of the rents and profits of the land", &c. But for the ascertainment of the value of the rents and profits on the basis of their value *in specie*, it is fair to presume a larger balance would have been found against the vendor. But as it is, the decree accomplishes the following result: In something more than six years, during four of which the late war was in progress, the rents and profits of the land, and proceeds of timber sold, estimated on a specie basis, pay the entire purchase-money, and five hundred and sixty-six dollars over, which the vendee recovers, together with the land, from the vendor. It is contended that such a result, under all the circumstances of the case, is inequitable; and that for this reason specific performance of the agreement between the parties should not be enforced.

It is true that, on a bill for specific performance, a court of equity reserves to itself a discretion of giving or refusing its aid, not arbitrarily or capriciously, but upon a sound and temperate consideration of the merits of each particular case, exercising its discretion in a judicial manner, according to existing rules.—*Gould v. Womack*, 2 Ala. 83; *Blackwilder v. Loveless*, 21 Ala. 371. And if, under all the circumstances of the case, it would be inequitable to enforce a performance, relief will not be granted, but the parties left to their legal remedy.—*Ellis v. Burden*, 1 Ala. 458; *Casey v. Holmes et al.*, 10 Ala. 776; *Blackwilder v. Loveless, supra;* 2 Story's Equity Jur. § 750. There would be much

greater force in the objection that the decree in the case before us was inequitable, for the reason stated, if the *legitimate* rents and profits of the premises had accomplished the result arrived at. Instead of this, however, two thousand dollars of the aggregate charged against the vendor was for *waste* committed by him, which, it is averred in the bill, was for his own profit, and to the detriment of the estate. We waive a more particular inquiry into the circumstances of the case, to ascertain if the decree, for the single reason above stated, was inequitable; preferring to rest our decision upon other grounds, which we will now proceed to consider.

2. By the agreement, the payment of the purchase-money in full by one party, and the execution of the stipulated conveyance by the other, were mutual and concurrent conditions, to be contemporaneously performed; and each of the contractors was bound to perform on his part at the time fixed.—*Ledyard v. Manning,* 1 Ala. 153; *McKleroy v. Tulane,* 34 Ala. 78. The vendee, however, never having been in possession under the contract, but the vendor having retained the possession, and had the use and enjoyment of the lands from the date of the contract, when the time arrived for the payment of the purchase-money in full, the vendee was entitled to an account of the rents and profits, and to have his notes for the purchase-money credited therewith.—*Davis v. Lassiter,* 20 Ala. 561. The demand for such an accounting, and an offer, coupled with the ability, to pay any balance that might be found against him on the account, being stated, and the tender of a deed to be executed by the vendor conveying the title, were acts, the performance of which by the vendee was required by the contract, to make the obligation of the vendor perfect.—*Wade v. Killough et al.,* 5 Stew. & Por. 450; *Johnson and Wife v. Collins,* 17 Ala. 318. It is contended that a compliance with these conditions on the part of the vendee was rendered unnecessary, not by the entire absence of a capacity on the part of the vendor to give a good title, *(Johnson and Wife v. Collins, supra,)* nor by his having been *prevented* from their performance by the vendor, *(Bass & Carter v. Gilliland,* 5 Ala. 761,) but by the acts of the

28

vendor in violation of the contract, *before the time had arrived for their performance.*

We must look to the allegations of the bill for the ascertainment of the acts of the defendant, thus relied on, inasmuch as the allegations relating to these acts, under the decree *pro confesso*, constitute the only evidence bearing upon this question. It is averred in the bill, that "soon after the purchase, complainant demanded possession of the land, which defendant had agreed to give him, but defendant refused to give it to him;" "that the defendant continually evaded a compliance, until the 25th December, 1860, when complainant tendered him payment of the first thousand dollars due, in gold; but that the defendant absolutely refused, and repudiated the contract, declaring he never would comply with it;" "that he is entitled to have his notes for the purchase-money credited by the proceeds of the sale of the timber and other trees, and the value of the wood sold and carried off, and also by the value of the rents and profits of the cleared land, and the houses and improvements, and if there be any excess after paying the notes, that he should have a decree for such excess;" complainant "offering to do and perform, however, whatever the court may direct, and to pay whatever the court may decide to be right." It is further averred, "that ever since the day of sale, complainant has been ready and willing to comply with the terms and conditions on his part," and "that nothing but the refusal of the defendant to comply with the contract on his part prevents a renewal of attempts to obtain title without suit, but after repeated and decided refusals he has deemed it unnecessary to do any thing further."

The facts upon which a decree is based, upon an implied confession, should be distinctly alleged; and no intendment of a fact, not within the allegations, can be made, to support such a decree.— *White v. Lewis*, 2 A. K. Marsh. 123. And on a bill for specific performance, allegations of a general character, as to performance by one party, or non-performance by the other, are insufficient. Facts should be distinctly stated, not mere conclusions, that the court may judge if each has done all that he ought.—*Davis v. Harri-*

*son,* 4 Litt. 261 ; *McKleroy v. Tulane,* 34 Ala. 79. The distinct acts charged against the defendant, in repudiation of the contract, are—1st, that demand having been made for the possession of the land, " soon after the purchase," the defendant refused to give it; 2d, that ever since the date of the purchase, defendant has continuously occupied the premises, using them as his own ; 3d, that the first installment of the purchase-money having been tendered on the day it was due, the defendant refused to receive it, and repudiated the contract, declaring he never would comply with it. These transactions, except the continuous possession of the defendant, occurred *two years before the time fixed by the contract for its complete performance.*

It is true the equitable estate vested in the purchaser, under such a contract as the one we are considering, is attended by most, if not all, the incidents of ownership ; and that it confers upon the purchaser the right of entry and enjoyment, until such time as he may make default in the payment of the purchase-money, or any part thereof. If such default be made, the vendor may assert any one of the remedies afforded a mortgagee, as a means of realizing his debt ; the legal title being held by the vendor, as a security for the payment of the purchase-money, and a court of equity considering the contract in the nature of a conveyance to the purchaser, and a re-conveyance back by way of mortgage.—*Reid v. Davis,* 4 Ala. 83 ; *Roper v. McCook & Robinson,* 7 Ala. 318 ; *Springle's Heirs v. Shields & Paulling,* 17 Ala. 295 ; *Johnson and Wife v. Collins,* 17 Ala. 318 ; *Haley et al. v. Bennett,* 5 Porter, 452 ; *Chapman v. Chunn et al.,* 5 Ala. 397 ; *Chapman v. Glassel,* 13 Ala. 50 ; *Conner et al. v. Banks,* 18 Ala. 42 ; *Kelly v. Payne,* 18 Ala. 371 ; *Ross v. Ross,* 21 Ala. 322 ; *Davis v. Lassiter,* 20 Ala. 561 ; *Seabury v. Stewart & Easton,* 22 Ala. 207.

But, such being the law, the refusal of the defendant to give the complainant possession, when entitled to it under the contract, did not leave the complainant without remedy. He might have sued at law for a breach of the contract, or filed his bill for such equitable relief as the circumstances would justify.—*Johnson and Wife v. Collins, supra.* The failure to seek any redress was seeming acquiescence in

the repudiation of the contract by the defendant. But, if he did not intend such acquiescence, when, after the lapse of two years, the time arrived for the performance of the mutual conditions necessary to a complete execution of the contract, he should have been prompt to perform those conditions required of him. For, it is a rule in equity, that the party seeking performance must show that he has not been in fault, but has taken all proper steps towards performance on his own part, and has been ready, prompt, and eager, to perform those acts which constituted the consideration of the alleged promise on the part of the defendant.—*Colson v. Thompson*, 2 Wheaton, 336; *Rogers v. Saunders*, 16 Maine, 92; *Brown v. Haines*, 12 Ohio, 1; *Bates v. Wheeler*, 2 Scam. 54. And, although a party may have disregarded the terms of his contract, the other party must show reasonable diligence to entitle himself to a decree of performance. It is not sufficient for him to show that the opposite party is in default, but he must show himself without default.—*Longworth v. Taylor*, 1 McLean, 395; *Doyle v. Teas*, 4 Scam. 202; *McKleroy v. Tulane*, 34 Ala. 78; *Higby v. Whittaker*, 8 Ham. 198. In asking for relief against injustice arising from the bad faith of his adversary, he must not be obnoxious to the same imputation. In suits of this character, as Judge Story has said, "the maxim is emphatically applied, he who seeks equity must do equity."—2 Story's Eq. Jur. § 693.

In the case before us, although the vendor had declared, two years before the time had arrived for full performance, that he never would comply with the contract on his part, yet, when that time arrived, *non constat* but he would have reconsidered and made a title, if the vendee had performed the conditions required of him. There may be cases, in which it is sufficient for the complainant, by his bill, to offer to pay whatever sum is admitted or ascertained to be due to the defendant, or to do whatever the court may consider necessary to be done on his part towards making the decree which he seeks just and equitable with regard to the other parties to the suit.—*Martin's Heirs v. Tennison et al.*, 26 Ala. 738, and authorities there cited. But, as we have seen, in bills for specific performance, a more stringent

rule prevails.—*McKleroy v. Tulane*, 34 Ala. 78; and authorities before cited.

3. But there is another consideration which militates against the case of complainant. If one of two parties, concerned in a contract respecting lands, gives the other notice that he does not hold himself bound to perform, and will not perform the contract between them; and the other contracting party, to whom the notice is so given, makes no prompt assertion of his right to enforce the contract, equity will consider him as acquiescing in the notice, and abandoning any equitable right he might have had to enforce the performance of the contract, and will leave the parties to their remedies and liabilities at law.—2 White & Tudor's Eq. Cases, note to *Seton v. Slade*, part 2, page 16; *Guest v. Pomfrey*, 5 Vesey, 818; *Heapley v. Hill*, 2 Sim. & Stu. 29; *Watson v. Reid*, 1 Russ. & My. 236; *Walker v. Jeffreys*, 1 Hare, 341. Not deciding the question, whether the rule thus laid down had application to the case of complainant before the time fixed for the complete performance of the contract; yet, with distinct and emphatic notice that the defendant would not hold himself bound to perform the contract between them, given two years before the period fixed for performance, he permitted about nine months to elapse from the latter period, before he filed his bill to enforce performance; and this delay on his part is not accounted for, but left wholly unexplained. In *Watson v. Reid*, (1 Russell & Mylne, 236,) the plaintiff, the vendor, having notice from the purchaser that the latter abandoned his contract, did not file his bill for specific performance, until about one year afterward; and the bill was dismissed on the sole ground of unreasonable delay in filing it. In such cases, though time be not of the essence of the contract, a court of equity will not allow of a delay which would enable a party to take advantage of the turn of the market, and have the contract performed, *only in case it suits his interest*. The complainant in the case before us, by the delay in filing his bill, and by his failure to perform the acts required of him by the contract, did not evince that promptness and eagerness for a performance required at his hands, to entitle him to invoke the urgent powers of a court of

chancery to compel performance. But we do not hold that the delay in the filing of the bill would, of itself, be sufficient to deprive him of the right to relief.

For the reasons we have given, we feel constrained to hold, that the chancellor should not have decreed a specific performance in this case. "Considerable ·caution should be used in decreeing specific performance of agreements, to see that it really does complete justice between the parties ";—(*King v. Morford*, Saxton's N. J. Ch. Rep. 274;)— and the extraordinary powers of a court of chancery "ought never to be applied, *in the exercise of any discretionary jurisdiction*, when doubts prevail as to the perfect soundness of the plaintiff's claim, or apparent justice characterizes the defendant's objections."—*Dalzell ·v. Crawford*, Parsons' Select Equity Cases, 37. The refusal of a court of equity to decree specific performance, does not absolutely repudiate the complainant's rights, if any he can establish. It only denies to him an extraordinary remedy, properly applicable only to cases in no respect equivocal, leaving him to a court of law for any redress to which he may be entitled. 2 Story's Equity Jur. § 769.

The disposition we make of this case renders it unnecessary to consider any of the other questions presented by the record, and argued by counsel.

Let the decree of the chancellor be reversed, and a decree be here rendered dismissing the bill, without prejudice to complainant's remedy at law. Appellee must pay the costs of this court, and of the court below.

NOTE BY REPORTER.—On a subsequent day of the term, in response to an application for a modification of the decree, by the appellee's counsel, the following opinion was delivered:

JUDGE, J.—We are asked to modify the decree rendered in this cause on a previous day of the present term, by reversing and remanding the cause, instead of dismissing the bill. We cannot, as was said in *Williams v. Barnes*, (28 Ala. 613,) "consistently with the decisions of this court, and a wholesome justice, remand the case. The settled

practice of this court is, to render the decree which the chancery court ought to have rendered, where the amendment would have the effect of making a different case." The reasoning and conclusion attained upon this question, in the case cited above, fully sustained as it is by the authorities therein referred to, constrain us to refuse the application.